WALL, Appellant, vs. THE MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*September 8 — September 26, 1893.*

*Vendor and purchaser of land: Option to purchase: Oral modification: Part performance: Equity.*

1. Where one having a written option for the purchase of land elects to purchase within the time prescribed, and enters upon the land and expends money thereon, he may enforce performance of the contract.

2. Although an oral modification of such contract is within the statute of frauds, yet where the purchaser, relying thereon, has expended large sums in improvements, the courts may compel specific performance of the contract as modified.

APPEAL from the Circuit Court for *Polk* County.

On May 4, 1886, the plaintiff and the Minneapolis, Sault Ste. Marie & Atlantic Railway Company entered into a written contract to the effect that in consideration of one dollar paid to the plaintiff by the said railway company, the receipt whereof was thereby acknowledged, the said plaintiff did thereby give and grant to said company the right to purchase within one year from the date named, if it should so elect, a strip of land 200 feet in width, therein described, and also another strip of land 125 feet in width, therein described, which last-named strip was composed of two strips, therein described. And said written agreement also contained the following, to wit:

"If this option is accepted by the said company within the time above limited, then I agree to convey to it in fee simple the above described strip of land, by good and sufficient deed, with full covenant of seizure and warranty, and discharged of all dower and right of dower and other incumbrances, for and in consideration of the sum of three hundred ($300.00) dollars, to be paid therefor by said company on delivery of such deed.

Wall vs. The Minneapolis, St. Paul & Sault Ste. Marie R. Co.

" In consideration, as above expressed, I consent that said company and its officers, agents, contractors, and subcontractors, and its and their and each of their servants, may forthwith enter upon said strip of land above described, and do all and any acts necessary to the construction of a railroad upon the above described strip of land; and agree that, if this option be taken by said company, said deed of conveyance shall release all damages to any other premises by reason of the taking of the above strip of land and the construction thereon of a railroad by said company.

" Said company may, within the time for accepting this option above limited, institute appropriate proceedings to condemn the above described strip of land, and in such cases, but not otherwise, shall be deemed to have thereby and thenceforth waived the right to purchase the same at the price herein stated. .

" Provided, however, and this contract is executed upon the express condition, that should said company elect to ·purchase the said belts or strips of land herein described. in pursuance of this contract, *it shall preserve substantially · as the same now exists the approach to the limekiln on said: premises known as the 'Patent Limekiln,' and shall also· construct on some feasible place on said premises a side track,; . to be used by me.*

" This agreement shall bind the heirs, successors, per-- sonal representatives, and assigns of the parties thereto.

" Dated this fourth day of May, 1886.

" In presence of                     SAMUEL x WALL [Seal.]
    " GEO. D. McGILL,
    " CHARLES H. OAKEY."

In January, 1887, in pursuance of the terms of said con- tract, the said railway company, by its contractors, entered . . upon said right of way designated in said contract, and ' commenced the construction of its road upon and along the same.   On January 31, 1887, the said railway company.

entered into an oral agreement with the plaintiff, whereby the plaintiff agreed to permit said railway company to fill up and permanently obstruct the private wagon road leading from the highway to said limekiln, and to aid said company in securing a vacation of said public highway, in consideration of which the said company agreed to construct for the plaintiff, on his land, a new and different wagon road to said kiln, on a line then agreed upon between the parties, which line commenced at a point near where the said right of way crossed the south line of government lot 4, and on the northwesterly side of said railway track, and ran thence in a northeasterly direction near the northwesterly side of said right of way to said limekiln. By said agreement the parties intended to and did modify said written contract by substituting the agreement to construct said new road for the agreement to preserve the road leading from the highway to the limekiln heretofore mentioned; but in so far as the written agreement provided for preserving the track in use at the time of making said contract, leading from the vicinity of the limekiln to the top of said kiln, the same was not modified by said verbal agreement.

In pursuance of said contract as modified by said verbal agreement, the said railway company proceeded to build its railroad across said lands, and to fill up and permanently obstruct the old wagon road referred to in said written contract, and expended in such construction across said lands the sum of $25,000. Said railway company and the defendant have ever since been, and still are, in possession of said right of way, and the same constitutes a part of the main line of the defendant's road as now operated by it. During the construction of said road no objection was made by the plaintiff to the acts of the parties engaged in such construction, notwithstanding he had notice thereof, except that he objected to the filling up of the highway

leading from the vicinity of said kiln to the top thereof, and objected to the workmen rolling down rock upon and around said kiln and upon and around buildings used in connection therewith. A large amount of rock was thrown down upon said kiln and around the same and said buildings by the workmen, whereby said kiln and buildings were considerably injured and rendered useless till such time as the debris was removed, and the kiln and buildings put in a state of repair, and the way reopened to the top of said kiln. While the work of constructing the road across said lands was progressing the plaintiff repeatedly protested against the acts of the contractors in throwing down rocks in the manner stated, but was each time told that the debris would be removed, and the kiln and buildings repaired, as soon as the roadbed in the vicinity thereof was constructed.

Within one year from the date of said written contract the said company duly declared its option to purchase the said right of way in pursuance of said written contract, and tendered to the plaintiff the sum of $300, and demanded of him a deed in pursuance of said written contract; but the plaintiff refused to receive said sum, or to comply with the terms of said contract, or to execute said conveyance. The company kept said tender good. The railway company graded said track, and notified the plaintiff that it was ready to perform said written contract as modified; but the plaintiff, without any justifiable excuse therefor, refused to permit said company to do the same. The only reason why the said work was not then done was because of the plaintiff's refusal to permit it to be done.

In September, 1889, the plaintiff filed in the office of the clerk of the circuit court a petition for condemnation proceedings under the statutes. Upon the hearing of said petition the defendant answered, claiming to be the equitable owner in possession, and entitled to a deed of said right of way, and asked that the said petition be dismissed,

for the reason that its rights could not be adjudicated in such summary proceedings, whereupon it was stipulated by the parties thereto and hereto that said proceedings be stayed until this action could be brought and the rights of the parties hereto adjudicated, and an order to that effect was made accordingly. Thereupon the plaintiff commenced this action to set aside said written contract and said modification thereof, and to have the same declared null and void, and that all claim of the defendant to the possession or right, title, interest, equity, or lien in or upon said lands be forever absolutely determined; and alleging that the plaintiff was during all the time mentioned a married man, and living with his wife and family upon a portion of said lands as his homestead. On January 29, 1890, the defendant answered said complaint, alleging in effect the facts stated, and also denying that any portion of the plaintiff's homestead was included in said right of way, and also alleging the same as a counterclaim to said action, and praying judgment that the plaintiff be required to perform in all things the conditions of said written contract as so modified, and that he be required to execute and deliver to the defendant a deed of said right of way described therein, and that the plaintiff be required to specifically perform said contract so modified. The plaintiff replied to said counterclaim.

Upon the trial of the issues so formed it was in effect found, in addition to the facts stated, that upon the trial of this action the defendant in open court consented that the westerly line of its right of way at said limekiln should be located so as to leave said kiln intact, with a sufficient space upon and on the east side thereof to allow the plaintiff a driveway to the top of said kiln, and to use and operate the same; that such offer was substantially in accordance with said written contract; that said offer concedes to the plaintiff all that he would be entitled to under the

most favorable construction of said contract, but that the court was unable from the evidence to determine, with sufficient definiteness to direct a conveyance of the right of way to the defendant, the line of said right of way as the same must be located in order to agree with said offer; that the evidence does not disclose any mistake of the parties in the location of the line of said right of way at the limekiln, but that it satisfactorily appears that it was understood by all the parties that said line was so located as to leave some portion of said limekiln in the defendant's right of way, and it was agreed that the said right of way should nevertheless not interfere with the maintenance and operation of said kiln as the same then existed, and the proviso to said contract was intended to secure to the plaintiff the right to so maintain and operate said kiln; that the evidence does not show that any part of said lot was included in the plaintiff's homestead at the time of making said contract.

From the facts so found the court concluded that the work required to be done under the proviso to said contract as modified was not a condition precedent to the right of the defendant to a deed to said right of way; that the acts of the plaintiff constituted a waiver of the conditions of said proviso, at least so far as the performance of such conditions would require a greater expenditure of money than would have been required if the plaintiff had permitted the work to be done when the railway company's contractors were on the ground; that the said oral agreement, so far as it modified the written contract, was a valid and binding agreement, and that the written contract as so modified was a valid, subsisting, and binding contract between the parties; and that the defendant, on doing what was therein equitably required of it, was entitled to have said contract specifically performed by the plaintiff.

Thereupon the said court referred said cause to a referee

to ascertain certain matters therein mentioned, but, upon the report of the referee being made and filed, it satisfactorily appeared by an inspection thereof that said referee did not follow the order of reference, and that his findings were erroneous, and accordingly the findings of said referee were set aside and vacated. The parties hereto then submitted the questions referred to said referee to the court for determination upon the evidence taken before said referee and other evidence taken in court, and the court found, in addition to what had previously been found, as matters of fact, that the correct description of the westerly line of the right of way of the railway company at the limekiln, locating the same around and east of said kiln, so as to leave said kiln outside of said right of way, with a sufficient space around and upon the east side thereof to enable the plaintiff to use said space as a driveway to the top of said kiln, was and is as therein described, and traced with a red line upon the blue print attached to said findings. And it was ordered that the line of said railway company's right of way in the vicinity of said limekiln be established as above set forth. The court further found that it would have cost the company to have constructed the new road to the limekiln as mentioned, and to have restored said roadway, remove the rocks thrown down upon said kiln and the buildings in connection therewith and around said buildings and kiln, and to put said kiln and buildings in substantially as good state of repair as they were at the time of making said written contract, if the railway company had been permitted by the plaintiff to have done the work before defendant's contractors left the premises, the sum of $1,200; that the plaintiff was only equitably entitled to that sum from the defendant as a condition of the performance of said written contract as so modified; that the defendant was willing that said road should be constructed inside of its right of way from the crossing of the

main track near the side-track northeasterly for a distance of about 400 feet, passing off said right of way onto the plaintiff's land outside of said right of way, and that the road can there be constructed at much less expense than on a line wholly outside of said right of way, and that the said road so constructed inside said right of way for a distance of about 400 feet will fully satisfy said plaintiff's needs and comply with said agreement for said new road from the side track to the limekiln; that all equitable considerations demand that the new road be located on the line specified, requiring the least expense, and that the sum which the defendant should be required to pay as a condition of the plaintiff's performance of said contract should be limited to what it would have cost the railway company to have constructed said new road on said less expensive route; that if there was anything in the former findings therein in conflict with such determination, the same were thereby modified accordingly. And it was ordered that the findings theretofore filed, as modified and corrected by these findings and conclusions, should constitute the measure of the rights and liabilities of the parties herein.

On June 15, 1892, the defendant deposited with the clerk of the trial court the said sum of $1,200 for the use of the plaintiff, in accordance with the said findings of the court therein filed with said clerk, May 17, 1892. On November 22, 1892, it was ordered that the plaintiff be required within thirty days from and after the service of a copy of this order on him and his attorneys, to execute and deliver to the defendant a deed conveying to it the right of way for its railroad through the said lands of the plaintiff according to said contract, except that the description of the west line of said right of way at and in the vicinity of the plaintiff's limekiln mentioned, should be as described and as indicated by the said red line on the map constituting a part of the record. From the judgment entered accordingly the plaintiff appeals.

Wall vs. The Minneapolis, St. Paul & Sault Ste. Marie R. Co.

For the appellant the cause was submitted on the brief of *Chas. H. Oakey* and *Searles & Gail*.  They contended, *inter alia,* that the contract was a mere option, which conferred no interest either legal or equitable in the land.  The right of purchase, to be made available, must have been exercised at or within the time specified in the agreement, and the conditions precedent, if any, must be faithfully observed.  Equity cannot relieve from nonperformance of terms and conditions, however arbitrary, imposed on the right to exercise an option to purchase.  *Lombard v. Sinai Congregation,* 64 Ill. 477; *Sutherland v. Parkins,* 75 id. 338; *Bostwick v. Hess,* 80 id. 138; *Longfellow v. Moore,* 102 id. 289; *Chappell v. McKnight,* 108 id. 570; 1 Warvelle, Vendors, 187.

For the respondent there was a brief by *H. B. Dike,* attorney, and *Alfred H. Bright,* of counsel, and oral argument by *Mr. Dike.*

CASSODAY, J.   This case comes before us upon the pleadings and the findings and judgment of the court.  These findings exclude from our consideration the contention apparently made in the trial court, to the effect that a part of the land covered by the contract was included in the plaintiff's homestead, and that, as the contract was not signed by the plaintiff's wife, it could not be enforced against the land.

The statute declares, in effect, that every contract for the sale of any lands, or any interest therein, shall be void unless the contract expressing the consideration be in writing, and be subscribed by the party by whom the sale is to be made.   Sec. 2304, R. S.   The mere fact that the contract in question was only signed by the vendor does not prevent its enforcement against him and the land.   *Docter v. Hellberg,* 65 Wis. 415.   There can be no question but what it sufficiently expresses the consideration.   The contention is that the writing was a mere option, without

mutuality, and gave the company no interest in the land. But one having an option in writing for the purchase of land has an interest therein, within the meaning of the section of the statute cited, as well as sec. 2302, R. S. *Telford v. Frost*, 76 Wis. 172.. Where the option is exercised by electing to purchase within the time prescribed, and entering into the possession of the land and expending money thereon, there would seem to be no good reason why such contract should not be enforceable. *Kerr v. Day*, 14 Pa. St. 112, 53 Am. Dec. 526.

It is contended, in effect, that under the statute cited it was incompetent for the parties to modify the written contract by parol; and hence that the court improperly enforced such contract so modified; and in support of such contention counsel seem to rely on *Atlee v. Bartholomew*, 69 Wis. 43, and *Heisley v. Swanstrom*, 40 Minn. 196. These cases are in line with the general rule that under the statutes cited an agreement for the sale of land, wholly or in part oral, cannot of itself be enforced in equity. But the statute also provides, in effect, that nothing contained in those sections " shall be construed to abridge the powers of courts to compel the specific performance of' agreements, in case of part performance of such agreements." Sec. 2305, R. S. This court has frequently held that the mere payment of a portion, or even the whole, of the purchase price, is not such part performance as to take the case out of the statutes. On the other hand, this court has frequently held that payment of any considerable part of the purchase price, and the vendee's entry into possession and making valuable improvements thereon, constitute such part performance of an oral agreement for the sale of land as will take the case out of the statute of frauds and justify the enforcement of specific performance. *McWhinne v. Martin*, 77 Wis. 182, and the numerous cases there cited by Mr. Justice TAYLOR. See, also, *Lanyon v.*

Wall vs. The Minneapolis, St. Paul & Sault Ste. Marie R. Co.

*Martin,* L. R. 13 Ir. 297; *Brown v. Sutton,* 129 U. S. 238. So, where there has been such part performance by the vendee that it would operate as a fraud upon him to allow the vendor to repudiate the contract, the same will be enforced in equity. *Paine v. Wilcox,* 16 Wis. 202; *Martineau v. May,* 18 Wis. 54; *Seaman v. Aschermann,* 51 Wis. 678; *Cutler v. Babcock,* 81 Wis. 195. The underlying principle here applicable is well expressed by MITCHELL, J., in *Brown v. Hoag,* 35 Minn. 375, where it is said: " He (the appellant) invokes the rule that acts relied on as part performance must be referable to and done in pursuance of the contract, and seems to assume that this includes only acts which were *stipulated* to be done in the contract itself and as a part thereof. We do not understand this to be the law. While the phrase ' part performance ' is commonly used as a short and convenient statement of the general ground upon which verbal agreements regarding real estate are enforced, yet the whole doctrine rests upon the principle of fraud, and proceeds upon the idea that the party has so changed his situation, on the faith of the oral agreement, that it would be a fraud upon him to permit the other party to defeat the agreement by setting up the statute. Hence the term ' part performance ' falls far short of expressing the whole doctrine and theory of courts of equity in this matter. The change of situation necessary to create this equitable estoppel must, of course, have been made in reliance upon, and in pursuance of, the oral agreement, and so connected with the performance of the contract that, from the nature of the case, the defendant should understand it was done in reliance upon his agreement. The acts done must be related to and connected with the contract, and the defendant's performance of it. . . . But this change of situation is not confined to doing what the contract *stipulated,*— that is, ' part performance,' strictly so called."

Houlton vs. Chicago, St. Paul, Minneapolis & Omaha R. Co. and another.

As indicated in the foregoing statement, the company entered into possession, and after the company declared its option to purchase under the contract, and the written contract was modified by parol, the said company, relying thereon, constructed its road across said land, and expended a very large amount of money in performance or pursuance of such contract so modified. The mere fact that the court did not compel the defendant to pay for injuries caused by the plaintiff's own conduct is no ground for reversal. Nor is the plaintiff aggrieved by the defendant's voluntary relinquishment of a portion of the land described in the original contract. The facts found by the court manifestly justify the decree entered.

*By the Court.*— The judgment of the circuit court is affirmed.