DINGMAN and wife, Respondents, vs. HILBERRY and wife, Appellants.

*November 20—December 8, 1914.*

*Specific performance: Oral contract to convey land: Evidence: Sufficiency: Definiteness of contract: Mutuality: Partial performance: Abandonment: Laches: Judgment.*

1. In an action to compel specific performance of an agreement to convey land, the evidence is *held* sufficient to sustain findings to the effect that in 1900 defendant orally agreed to furnish the money to buy in his own name a farm for plaintiff, his son-in-law, that plaintiff could have all the time he required to pay defendant the purchase price, and that when he had made some substantial payment the title should be transferred to him; that in pursuance of such agreement a farm was purchased for $6,000, and plaintiff went into possession and occupied it for ten years, exercising all rights of ownership, paying taxes and making extensive and valuable improvements; and that plaintiff had paid to defendant on the purchase price sums aggregating more than $3,000.

2. Liberally construed, such contract meets all requirements for the enforcement of specific performance, being definite, mutual, founded upon valuable consideration, free from fraud or mistake, and reasonable in its scope and purpose.

3. Although the times of payment and time of conveyance were not fixed absolutely, yet the provision that plaintiff should have such time as he required to pay for the farm meant that he should pay as he was able, and his ability to pay, as well as what would constitute a substantial payment which would entitle him to a deed, were facts which could be ascertained with sufficient certainty.

4. While the general rule is that the mutuality of a contract will be determined as of the time it was entered into, there are many exceptions. Conditional contracts, such as options to purchase land, that become binding only upon the happening of an event or the exercise of the choice granted, may be specifically enforced upon the happening of the event or the exercise of the option within the prescribed time, a mutuality of remedies when the case is ripe for a decree being sufficient.

5. In this case the partial and substantial performance of the contract by plaintiff, with his offer to complete performance, *would seem*, also, to be equivalent to an obligation on his part to perform.

6. The facts that after ten years' occupancy plaintiff temporarily left the farm upon defendant's request, to aid defendant in settling a domestic difficulty with his wife, and that, upon further payments being refused by defendant, he delayed bringing an action because defendant said he was going to deed the land to his daughter (plaintiff's wife) without further payments, did not show an abandonment of the contract by plaintiff or such laches on his part as to defeat the action.

7. A decree for specific performance in such case, by which defendant received the price paid by him for the farm, with interest, was not inequitable although the land had, largely through plaintiff's labor, greatly increased in value, the plaintiff being entitled to the benefit of his purchase upon complying with its terms.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Action for specific performance. The facts will sufficiently appear from the findings made by the trial court, which are as follows:

"(1) The plaintiff *Edmund C. Dingman* is a son-in-law of the defendants *Alfred Hilberry* and *Ella Hilberry,* his wife, the plaintiff *Myrtle Dingman* being a daughter of said defendants. The plaintiffs were married in July, 1900, and moved upon the lands in question in this action in March, 1901.

"(2) Soon after the marriage of the plaintiffs the defendant *Alfred Hilberry* advised the plaintiff *Edmund C. Dingman* to purchase a farm, and thereafter prior to March, 1900

[1901], entered into an oral agreement with the plaintiff *Edmund C. Dingman,* whereby it was agreed that the defendant *Alfred Hilberry* would furnish the money with which to purchase a farm for the said plaintiff *Edmund C. Dingman.* That the plaintiff could have all the time he required in which to pay back the amount of the purchase price, and that the defendant *Alfred Hilberry* would take the title in his own name as security until such time as the plaintiff had made some substantial payments on the purchase price to the defendant, when it was agreed the title should be transferred to the plaintiff.

"(3) In pursuance of this agreement the plaintiff *Edmund C. Dingman* and the defendant *Alfred Hilberry* together examined a number of farms, and finally agreed upon a farm situated in the town of Sylvan in Richland county, Wisconsin, known as the Keys farm, described as follows, to wit: 'The southwest quarter, and the southwest quarter of the southeast quarter, of section 21, in town 11 north, range 2 west.'

"(4) That in furtherance of said oral agreement the parties purchased said farm, paying therefor the sum of six thousand dollars ($6,000), the defendant *Alfred Hilberry* taking the title deed therefor in his own name and paying the full amount of the purchase price himself.

"(5) That the deed of conveyance from Keys to *Alfred Hilberry* was made and executed on the 28th day of February, 1901, and that in furtherance of said oral agreement the plaintiffs entered into possession of said lands in March, 1901, and that they continued to occupy said lands for a period of ten years thereafter, the plaintiff *Edmund C. Dingman* exercising all the rights of ownership thereover, the lands being assessed to him, and he paying the taxes thereon from the time of said purchase up to the present time, and that during that time the plaintiff *Edmund C. Dingman* made extensive and valuable improvements thereon, such as building new fences, clearing the lands of stumps, and other general improvements including the rebuilding and repairing the house thereon, the repairs on the dwelling house alone amounting to about $700.

"(5a) That the plaintiff *Edmund C. Dingman,* in furtherance of said oral agreement with the defendant, made

payments on the purchase price of said lands to the defendant *Alfred Hilberry* as follows:

| | |
|---|---:|
| December, 1901 | $300 00 |
| December, 1902 | 350 00 |
| January 12, 1903 | 700 00 |
| November 26, 1904 | 500 00 |
| December 23, 1905 | 600 00 |
| December 29, 1906 | 580 00 |
| Total | $3,030 00 |

"(6) That the total amount of the payments made by the plaintiff *Edmund C. Dingman* on the purchase price of said lands aggregated the sum of $3,030, and that the same was paid to the defendant *Alfred Hilberry* by the plaintiff upon the purchase price of said lands and were received by the said *Alfred Hilberry* as such, and that the defendant accepted said payments and still retains the same.

"(7) That the plaintiff *Edmund C. Dingman,* in 1907, tendered to the defendant *Alfred Hilberry* another payment of $500 on said lands, which the defendant refused to accept and has ever since continued to refuse to accept further payments from the plaintiff.

"(8) That in 1911 the defendants *Alfred Hilberry* and *Ella Hilberry* became involved in domestic troubles which culminated in the bringing of an action for divorce. on the part of the defendant *Ella Hilberry,* and upon the representations of the defendants, and particularly of the defendant. *Alfred Hilberry,* that their domestic troubles were caused by dissensions among their children over property matters, and. being desirous of effecting a reconciliation between the defendants, the plaintiffs were induced, by the request of the defendant *Alfred Hilberry,* to surrender possession of said lands to *Alfred Hilberry* temporarily, until such time as the defendants could adjust their domestic difficulties, the defendant *Alfred Hilberry* promising and agreeing to convey said lands to the plaintiff *Edmund C. Dingman* in accordance with their former oral agreement, and surrender full possession thereof to the plaintiffs as soon as the said *Alfred* *Hilberry* had effected a settlement of his domestic troubles.

"(9) That upon the request and upon the representations of the defendant *Alfred Hilberry* as aforesaid the plaintiffs removed from said farm in 1911, and the defendant *Alfred*

*Hilberry* thereupon leased the same to a tenant, who still remains on said premises.

"(10) That afterwards in 1911 the said defendants adjusted their domestic troubles by the defendant agreeing to lease the farm of the plaintiffs aforesaid to the defendant *Ella Hilberry* and to give her the proceeds thereof during her lifetime, which agreement was executed in writing and the divorce action thereupon dismissed, the defendants resuming their nuptial relations and living together at their former home.

"(11) That the defendant *Ella Hilberry* has never been in actual possession of said lands, but continues to reside with her husband, *Alfred Hilberry,* and that she had full knowledge of the agreement between the plaintiff *Edmund C. Dingman* and her husband, *Alfred Hilberry,* from the time of the making of said agreement and at the time of the settlement of said divorce proceeding brought by her, and that she had full knowledge, at the time of making such settlement of her divorce action, of the representations made to the plaintiffs by which they were induced to surrender possession of the farm to her husband, *Alfred Hilberry,* and of their claim of ownership thereto.

"(12) That the plaintiff *Edmund C. Dingman* has fully performed all of said oral agreement on his part to be performed.

"(13) That the amount which the plaintiff should pay for said lands is $6,000 with interest thereon at six per cent. per annum from the 28th day of February, 1901. That the plaintiff has paid thereon the sum of $3,030, and is entitled to credit therefor in the amount of each payment as of the time when such payment was made.

"(14) That the value of the said farm is $500 a year, and that the defendant *Alfred Hilberry* took possession of said farm in March, 1911, and is accountable to the plaintiff *Edmund C. Dingman* from that date for rent on said farm at the rate of $500 per year.

"(15) That the amount due and owing to the defendant *Alfred Hilberry* from the plaintiff *Edmund C. Dingman* as the balance of the purchase price of said lands is $6,906.52.

"(16) That the amount due to the plaintiff *Edmund C. Dingman* from the defendant *Alfred Hilberry* for the use of

said farm is $1,000, being the rental on said farm for two seasons at $500 per year, which in this case must be taken to mean the farming season."

As conclusions of law the court found:

"(1) It follows from the foregoing facts as found by the court that judgment in this action must go for the plaintiff for specific performance of the contract.

"(2) That the plaintiff *Edmund C. Dingman* is entitled to deduct from the $6,906.52 now due upon the purchase price of said farm the sum of $1,000, being the amount now owing to the plaintiff from *Alfred Hilberry* for the use of said farm for two years, and upon payment of the balance, to wit, the sum of $5,906.52, to the said defendant *Alfred Hilberry,* or to the clerk of this court for his benefit, the said *Alfred Hilberry* shall execute and deliver to the said *Edmund C. Dingman* a good and sufficient deed of conveyance for said above described lands, free from all incumbrance, or, in default thereof, then such judgment to have the same force, effect, and operation as such deed.

"(3) That the plaintiffs are entitled to have their costs and disbursements herein."

From a judgment entered accordingly the defendants appealed.

For the appellants there were briefs by *P. L. Lincoln,* attorney, and *Jones & Schubring,* of counsel, and oral argument by *Mr. B. W. Jones* and *Mr. Lincoln.*

For the respondents there was a brief by *Bancroft & Johns,* and oral argument by *L. H. Bancroft.*

VINJE, J.    Defendants claim (1) that the evidence is too vague, uncertain, and conflicting to establish with the requisite certainty the contract found by the court to have been made; (2) that the contract as found by the court is so uncertain and unilateral that it ought not to be enforced by specific performance; (3) that plaintiffs abandoned the contract and have been guilty of laches in seeking redress; and (4) that it would be inequitable to decree specific performance.

1. In view of the relation of the parties and the fact that the contract was oral and entered into more than ten years previous to the trial, it is not a matter of surprise that there should be not only a conflict but also some vagueness in the evidence. A definite contract, however, may be found and satisfactorily established upon conflicting testimony. The facts and circumstances surrounding a transaction may be such as to make certain and satisfactory that which is left vague and doubtful resting upon the oral testimony alone. The contract found by the court is quite a natural and probable one. A well-to-do farmer with more money on hand than he needs agrees to buy a farm for a newly acquired son-in-law, deed it to him when a substantial part of the purchase money is paid, and give him such time as he may require in which to pay for it. A farm is found; $6,000 is paid for it and the deed taken in the name of the father-in-law. The son-in-law is put in possession, occupies, tills, and improves the farm for over ten years, pays the taxes on it, and makes payments aggregating over half the original purchase price. We have examined the evidence with care and are satisfied that, taken in connection with the subsequent conduct of the parties, it sustains with the clearness requisite in such cases the findings of the court as to what the contract was.

2. In the contract found by the court these essentials are definite: the grantor, the grantee, the consideration, and the premises to be conveyed. Only the time of conveyance and the times of payment are not fixed absolutely. But they are sufficiently fixed so that they can be ascertained to a reasonable certainty. While it may be a matter of some difference of judgment as to what constitutes a substantial payment on a $6,000 purchase, yet that is no more difficult to determine than what is a reasonable time in which to make a payment. Contracts which fail to provide for time of payment must be paid within a reasonable time, but they are not held void for uncertainty on that account. *Boyington v. Sweeney,* 77

Wis. 55, 45 N. W. 938; *Lawrence v. M., L. S. & W. R. Co.*
84 Wis. 427, 54 N. W. 797; 9 Cyc. 611. So, too, the pro-
vision as found by the court that the son-in-law should have
such time as he required within which to pay for the farm,
means that he should pay as he was able. His ability to pay
was a fact that could also be ascertained with that degree of
certainty required in the enforcement of contracts.

What was said by the court in *Inglis v. Fohey,* 136 Wis.
28, 33, 116 N. W. 857, applies peculiarly to the present case:

"If, by aid of evidence showing the situation and surround-
ings of the parties at the time, and their subsequent acts, if
any, construing the terms of the writing, the court can with
reasonable certainty determine the meaning intended by the
parties, the court will not allow the contract to fall, but will
construe it in the light of such evidence and enforce its terms
as so construed, if there be no other fatal objections to it."

That was also an action for specific performance. Per-
haps as striking a case as can be found reported showing the
definiteness required in a contract in order to entitle it to spe-
cific performance is that of *Hannon v. Scanlon,* 158 Wis.
357, 148 N. W. 1082. There it was held that an agreement
to deed one of two specified forty-acre tracts to each of two
children could not be enforced specifically because it did not
appear which tract was to be deeded to each child, nor could
it be enforced as a contract to convey two undivided forty-
acre tracts to both as tenants in common because that was not
the agreement. But there were in that case no surrounding
facts and circumstances or subsequent conduct of parties to
which recourse could be had to make the agreement more def-
inite and certain. The agreement itself was definitely un-
certain. While the general rule is that the mutuality of a
contract will be determined as of the time it was entered into,
there are many exceptions to it. Conditional contracts, such
as options to purchase land, that become binding only upon
the happening of an event or the exercise of the choice

granted, fall outside the rule as to mutuality at the time of their execution, yet they may be specifically enforced upon the happening of the event or the exercise of the option within the prescribed time. *Wall v. M., St. P. & S. S. M. R. Co.* 86 Wis. 48, 56 N. W. 367; *Mueller v. Nortmann,* 116 Wis. 468, 93 N. W. 538; *Sizer v. Clark,* 116 Wis. 534, 93 N. W. 539; *McCormick v. Stiphany,* 57 N. J. Eq. 257, 41 Atl. 840. If there is a mutuality of remedies when the case is ripe for a decree that is sufficient. 7 Modern Am. Law, 24. Here the son-in-law alleges his ability to pay the whole amount due, and under the terms of the contract the father-in-law could sue for damages for a breach of contract to purchase if the son-in-law refused. There are also cases like *Howe v. Watson,* 179 Mass. 30, 60 N. E. 415, where the time for specific performance does not come till there has been a full performance by the party seeking it. In that case plaintiff agreed to take care of her sister till she died, on condition that she should leave all her property to plaintiff. The latter performed her part of the contract and the sister died intestate leaving both real and personal property. In an action for specific performance it was held, there being no obligation on the part of the plaintiff to perform, that so far as respects the right of specific performance an actual performance was equal to an obligation to perform. In the case at bar there has been a partial and substantial performance with an offer to perform the balance, and no good reason is perceived why that is not equivalent to an obligation to perform.

But the decision need not be based on the ground that a part performance is equivalent to an obligation to perform, for, liberally construed, the contract itself meets with the requirements entitling it to specific performance. It is definite, mutual, and founded upon a valuable consideration. It is free from fraud or mistake, and is reasonable in its scope and purpose. These are the essential requisites. *Mulligan v. Albertz,* 103 Wis. 140, 78 N. W. 1093.

3. The claim that the plaintiffs have abandoned the contract or have failed to seasonably seek the aid of a court of equity is not well founded.   They left the farm upon the request of the father-in-law in order to aid him in settling a domestic difficulty with his wife, and no doubt they delayed action after further payments were refused because he told them he was going to deed the land to the plaintiff *Myrtle Dingman* without further payments.   So he is responsible for both the abandonment of the farm and the delay in bringing the action.

4. We fail to see anything inequitable in decreeing specific performance.   So far as appears from the evidence, $6,000 was the value of the farm in 1901 when it was bought.   The father-in-law receives that sum with legal interest.   It is now claimed to be worth $18,000.   The son-in-law was entitled to the benefit of his purchase by complying with its terms.   His labor for ten years added greatly to the value of the farm and it is no more than just that he should reap the reward thereof.

*By the Court.*—Judgment affirmed.