## PEGG vs. OLSON

(No. 1116, February 18, 1924; 222 Pac. 223.)

CONTRACTS—VENDOR AND PURCHASER—CONDITIONS PRECEDENT—SPE-
CIFIC PERFORMANCE—RULE WHEN TIME FOR PERFORMANCE OR PAY-
MENT NOT SPECIFIED.

1.  A debt conditioned on the happening of an event cannot
    be enforced until the event happens, but where the debt
    is actually in existence, and payment is merely post-
    poned until the happening of an event which does not
    happen, payment must be made within a reasonable time.

2.  Where a contract for the purchase of land provided for the
    payment of balance of purchase price ''as soon as'' pur-
    chaser may obtain a loan from the government, and for
    the payment of interest on balance of purchase price at
    the rate required for loan ''from the government or any
    other source,'' and specified that ''any loss by fire or
    natural loss from this date is understood to be purchas-
    er's loss,'' and purchaser immediately took possession
    and made improvements on the land, the obtaining of a
    loan by purchaser from the government was not a condi-
    tion precedent to the payment of the balance of the pur-
    chase price, but payment was merely postponed until the
    happening of such event, and where loan was not obtain-
    ed it was payable within a reasonable time.

3.  Purchaser, who for some time had known that vendors had
    perfected their title, and were in a position to and were
    ready to perform their part of the contract by conveying
    good title to purchaser, could not complain that vendors
    had not perfected title within a reasonable time.

4.  A party to a contract, enforceable in equity, may sue to
    establish his rights thereunder as soon as the other con-
    tracting party has repudiated it, notwithstanding the
    time for full performance may not have arrived.

5.  Contract for sale of land, providing for payment of bal-
    ance of purchase price as soon as purchaser shall have ob-
    tained a loan from the government, held specifically en-
    forceable at the instance of the vendors, though purchas-
    er had not obtained loan, as against purchaser's conten-
    tion that the contract was so uncertain as to time of pay-
    ment that it was not subject to specific performance, since
    such contract, on purchaser's failure to obtain loan, re-

quired payment of balance of purchase price within a reasonable time.

6. The exact time for payment of balance of purchase price is not an essential term in contract for sale of land, but it is sufficient if payment is to be made within a reasonable time.

APPEAL from District Court, Big Horn County; HARRY P. ILSLEY, Judge.

Action by Georgia Pegg and another against Charles Olson for specific performance of an executory contract for the sale and purchase of land.

*R. B. West* and *Brome & Hyde, etc.* for Appellants.

The action is for specific performance of a contract for the sale of land; the trial court held that the contract was so indefinite and uncertain that it could not be enforced; Olson went into posesssion of the land and farmed it after the contract was made and has retained possession ever since; his statement of inability to procure a loan and that appellants failed to furnish an abstract and deed is not sustained by the evidence. Appelants were at all times ready to perform; no tender of purchase money is necessary to a party who repudiates his contract, Cheney v. Libbey, 134 U. S. 68; Rockland v. Leary, 203 N. Y. 469; there was a waiver of tender, 25 R. C. L. 218; specific performance will be decreed where the intention of the parties can be ascertained, 25 R. C. L. 218.

*Thomas C. Marshall* and *C. A. Zaring* for Respondent.

The contract fixes no time for payment or performance, it was made on condition that respondent could obtain a Federal loan; both parties realized that; specific performance will require performance upon terms agreed upon, 23 Stand. Ency of Pro. 1005, but the contract must be complete and free from doubt, 25 R. C. L. 218; Freeburgh v. Lamoureux, 15 Wyo. 22, 85 Pac. 1054; Moore v. Galupo, (N. Y.) 55 Atl. 628; Magee v. McManus, (Cal.) 12 Pac. 451; Burnett v. Kullak, (Cal.) 18 Pac. 401; specific per-

formance is granted or withheld as equity and justice seem to demand in view of all the circumstances of the case, Merrill v. Cattle Co., (Wyo.) 181 Pac. 963.

BLUME, Justice.

This is an action for specific performance. Plaintiffs, who are husband and wife, and defendant Olson were neighbors, the former living on the land hereinafter referred to and the latter living on the quarter section of land immediately to the west of plaintiff's land. Both tracts of land had been taken up by the respective parties under the so-called Carey Land Act, and at the time that the contract hereinafter mentioned was entered into, the title to plaintiffs' land was not complete, but the requirements to make it so were known to all of the parties. On February 13, 1920, the parties hereto entered into a contract which, aside from the acknowledgment, is as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"WITNESSETH, that Mrs. Georgia Pegg and Milo M. Pegg of Emblem Wyoming hereby agrees to sell to C. S. Olson of Greybull, Wyoming the West One-Half (W½) of the North East Quarter (NE¼) of Section Seventeen (17) of Township Fifty-two (52) North of Range Ninety-five (95), West of the 6th Principal Meridian in Big Horn County, Wyoming, for the consideration of Six Thousand and Four Hundred and no/100 Dollars payable as follows: Five Hundred Dollars cash receipt of which is hereby acknowledged, *the balance to be paid as soon as C. S. Olson, second party above, can get a loan through from the Government* and when Mrs. M. M. Pegg, the first party above mentioned, has a perfect title to the land from the State and then gives the said purchaser a good Warrantee Deed with an Abstract showing such perfect title. The unpaid balance above to draw interest at the rate of which purchaser will be required for the loan he makes from the Government or any other source.

"The purchaser herein to have possession from this date. Any loss by fire or natural loss from this date is understood to be purchasers loss.

"The purchaser is to pay all water assesments for the year 1920, and also taxes for the year, 1920.

"First party to clear up and pay all incumbrances and liens of whatever kind or nature, viz, the above mentioned $6400.00 is to clear up everything that may be against said land except whatever may be due from date of Deed on Drainage bonds.

"Dated this 13th day of February, 1920.    (italics are ours.)

Georgia Pegg
Milo M. Pegg
Charles S. Olson."

Possession of the land mentioned in said contract was taken by defendant immediately, and during such possession he expended, if we take the allegation in defendant's answer herein as true, the sum of $578 for water and drainage assessments against said land, and he also made improvements thereon of the value of $500 more. In March, 1921, plaintiff Milo Pegg and defendant had a talk in which the latter indicated his desire to have the contract above mentioned cancelled. On April 23, 1921, however, he made an application to the Federal Land Bank of Omaha for a loan of $8000 to cover both the tracts of land heretofore referred to, and other land, a total of about 370 acres, stating in said application that one of the purposes of the loan was the purchase of the lands of said plaintiffs. It does not plainly appear when the application was acted on, but judging from the notations thereon, it was not until after the month of June, 1921, and it was probably between that time and January 16, 1922, that the loan was rejected. The reasons for that action are stated in the following evidence of witness Corey, Attorney for said Federal Land Bank:

"Q. For what reasons did you report or rule that the applicant was ineligible?

A. Because the applicant's own statement showed he rented the land on a crop share basis; that he owned no machinery or farm implements; that he did not have livestock adequate for the farming of the land; that he did not reside upon the land, and that he was engaged in an occupation other than farming, to-wit: he stated that he was in charge of a pumping station, which I assume was at Greybull, Wyoming.

Q. Why did that make the applicant ineligible?

A. Under the terms of the Federal Farm Loan Act we may make loans only to actual farmers.

Q. Would this loan have been an eligible loan providing this man, the applicant, had been residing upon the farm at that time and actually engaged in farming the land?

A. Yes, it would have."

The testimony shows that defendant moved away from his land in June, 1921, although in the loan-application aforesaid defendant had already given his residence as Greybull. It does not appear whether any efforts were made by defendant, other than the making of said application, in order that he might obtain a loan from said Federal Land Bank or from some other source. Sometime in June, 1921, probably prior to the time that the application for a loan was rejected, plaintiff Milo Pegg went to the defendant concerning the performance of said contract. Defendant apparently refused to do anything, stating: "If you can get anything out of it, go to it." On January 16, 1922, defendant served on plaintiffs the following written notice:

"Greybull, Wyoming, January 16, 1922.
To Georgia Pegg and Milo M. Pegg,
Basin, Wyoming:

You and each of you are hereby notified that, under your agreement dated the 13th day of February, 1920, for the

sale of the West Half (W½) of the Northeast Quarter (NE¼) of Section Seventeen (17), Township Fifty-two (52) North of Range Ninety-five (95) West of the Sixth P. M., in Big Horn County, Wyoming, you have wholly failed to furnish an abstract of title and warranty deed and otherwise carry out the terms of said contract, and that, by reason of such default, I have been and am unable to carry out the provisions upon my part to obtain the money and I therefore, declare the said contract rescinded and you are hereby notified that I have elected to and do declare the said contract cancelled and shall forthwith surrender up all possessions, claims and rights in and to the premises aforesaid.

(Signed) Charles S. Olson."

The evidence, however, shows that the title of plaintiffs was complete at the date last mentioned and for some time prior thereto, and that Milo Pegg informed defendant to that effect. Plaintiffs, in their petition, pleaded said contract; their own readiness to perform, the refusal of defendant to do so, the fact that defendant had not attempted in good faith to obtain a loan from the Government of the United States, and asked to recover from the defendant judgment for the sum of $5900 with interest from February 13th, 1920; and that defendant be compelled to accept a warranty deed and abstract of title for said land as mentioned in said contract, or that plaintiffs be permitted to deposit same with the clerk of the district court for the use and benefit of defendant, and for equitable relief. The lower court entered judgment for defendant, from which plaintiffs appeal. It may here be added that the evidence in the record shows that the rate of interest on loans made by the Federal Land Banks is six per cent per annum.

1. Counsel for defendant, to uphold the judgment of the trial court, contend that the clause in the contract providing that the balance of the purchase price should be paid "as soon as" C. S. Olson could get a loan from the Government is a condition precedent, which has not happened and no

liability, therefore, exists. Courts are agreed that if the existence of the debt is conditioned upon the happening of an event, it cannot become enforceable until the event happens. But the rule is also well settled that if there is a debt actually in existence and payment is merely postponed until the happening of an event which does not happen, the law requires payment to be made within a reasonable time. 13 C. J. 631, 684; Page on Contracts (2nd Ed.) Sec. 2100, summarizes the holding of courts on this question as follows:

"The time of performance is sometimes made to depend upon the doing of some specified act other than that which the parties to the contract agree to do or it is made to depend upon the happening of some event which the parties to the contract do not covenant to cause to happen. The tendency of the courts is to hold that unless the contract shows clearly that such an action is an express condition, the provision with reference to such act is inserted in order to fix the time of performance, but not to make the doing of such act or the happening of such event a condition precedent. If this is the intention of the parties, the fact that such act is not performed or that such event does not happen, does not discharge the contract, and the act which the parties agree to do upon the performance of such act or upon the happening of such event, is to be performed in at least a reasonable time."

In the case of Hicks v. Shouse, 17 B. Monroe (Ky.) 483, defendant acknowledged having bought property for $500 and promised to pay for it "so soon as I sell a house and lot in the city of Lexington," and in the meantime pay 8% interest per annum. The court said:

"A reasonable construction should be given to the covenant—the intention of the parties should be effectuated, if practicable, and their understanding carried out. Such a construction, as we think, results in the conclusion that the

house and lot was to be sold in a reasonable time, or the
money be paid without a sale. The argument of defendant's
counsel would, as it seems to us, lead to an absurdity, and
would do violence to all reasonable calculation as to the in-
tention of the parties. It leads to the conclusion that the
defendant by paying eight per cent interest annually,
might postpone the payment of the debt to an indefinite
time."

In the case of DeWolfe v. French, 51 Me. 420, the plain-
tiff sued for commissions for obtaining freight for a vessel
and he had expressly agreed to wait for the pay until the
vessel for which the freight was obtained returned with the
cargo. The vessel never returned. The court held the debt
payable within a reasonable time, saying:

"If parties intend that a debt shall be contingent, as in
respondentia or bottomry contracts, then it will be so held
by the court. If, on the contrary, they intend that the debt
shall be absolute, and fix upon the future event as a con-
venient time for payment merely, as where a drover pur-
chases cattle, promising to pay for them on his return from
market, overlooking the contingency that he may never re-
turn, then the debt will not be contingent; and if the future
event does not happen as contemplated, the law will require
payment to be made within a reasonable time."

In the case of Nunez v. Dautel, 19 Wall. 560, 22 L. ed.
161, defendant acknowledged a certain amount to be due
and agreed: "This we will pay as soon as the crop can be
sold or the money raised from any other source, payable
with interest." The court said:

"Payment was not conditional to the extent of depending
wholly and finally upon the alternatives mentioned. The
stipulations secured to the defendants a reasonable amount
of time within which to procure in one mode or the other the
means necessary to meet the liability. Upon the occurrence

of either of the events named or the lapse of such time, the debt became due. It could not have been the intention of the parties that if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice.''

In Eaton v. Yarborough, 19 Ga. 82, the defendant promised to pay a note when he finished a church which he was building, and it was held that the promissor referred to the completion of the church by him as a time for payment, and not as a condition upon which only the note was to be paid. Cases of similar import are: Chadwick v. Hopkins, 4 Wyo. 379; 34 Pac. 899, 62 Am. St. Rep. 38; Cross v. Scruggs, 115 Ala. 258, 22 So. 81; Whiting v. Gray, 27 Fla. 482; 8 So. 726, 11 L. R. A. 526; Crooker v. Holmes, 65 Me. 195, 20 Am. Rep. 687; Alvord v. Cook, 174 Mass. 120, 54 N. E. 499, 75 A. S. R. 288; Sherman v. Mulloy, 174 Mass. 41, 54 N. E. 345, 75 Am. St. Rep. 288; Randall v. Johnson, 59 Miss. 317, 42 Am. Rep. 365; Wright v. Hull, 83 O. S. 385, 94 N. E. 813; Noland v. Bull, 24 Or. 479, 33 Pac. 983; Hood v. Hampton Plains Exp. Co., 106 Fed. 408; Brown v. Cruse, 90 Kans. 306; 133 Pac. 865; Greenstreet v. Cheatum, 99 Kans. 290, 161 Pac. 596; Williston v. Perkins, 51 Cal. 554.

Applying the foregoing principles of law, we have no difficulty in arriving at the proper conclusion in this case. The provision that payment is to be made by Olson ''as soon as'' he may obtain a loan from the Government refers, we think, to the time when payment should be made. The phrase ''as soon as'' is an adverbial phrase of time, and while that is not at all conclusive in determining whether it is used in connection with a condition or not, it has its bearing. The United States Government was not, we think, considered as the only available source from which the loan was to be obtained, as must be apparent from the fact that

the rate of interest to be paid on the balance of the purchase price should be such as would be required for a loan "from the Government or any other source." If the making of a loan were an unusual or extraordinary thing, we might possibly be led to the conclusion that the making of a loan should be considered a condition precedent. But here, as shown by the application for a loan, it was to be made on 370 acres of irrigated land; the making of loans on land is very common, and we do not think that it was ever in the contemplation of the parties that some loan, sufficient to pay plaintiffs, could not be obtained. The other provisions of the contract make this even clearer. Interest was to be paid on the balance of the purchase price. The contract provided that immediate possession of the premises should be given to Olson, and pursuant to that provision Olson actually took possession. We do not think that the parties would have made such provision if the obtaining of a loan had been considered a condition precedent. The giving and taking possession is a strong circumstance, particularly in connection with the improvements and expenditures made by Olson on and for the benefit of the land, in showing that he purchased the land not conditionally, but outright, awaiting only a reasonable time to complete all incidents in connection with such purchase. This is particularly emphasized by the clause that "any loss by fire or natural loss from this date is understood to be purchaser's loss." It is not reasonable to believe that defendant would have assumed such responsibility if he had considered the purchase as purely conditional. We think that we are constrained to hold, notwithstanding the fact that the contract was inartificially drawn, that the defendant purchased the land for $6400; that a present indebtedness thereby arose; and that defendant was to pay the balance due in a reasonable time. As to what is a reasonable time depends on the circumstances. In the case at bar it depended, partially, on the completion of the title of plaintiffs. It may even be, though we do not decide the point, that plain-

tiffs were compelled to furnish a good title within a reasonable time. But no objection on that point was made until January 16, 1922. At that time the title of plaintiffs was and had long been, to the knowledge of defendant, complete, and plaintiffs were and had been for some time ready to perform their part of the contract, and it was then too late to raise the objection. Pryor Mountain Oil Co. v. Cross, (Wyo.) recently decided. 222 Pac. 570. As to whether or not a reasonable time was given to plaintiffs after such title became complete is immaterial for the reason that defendant repudiated his contract. A party to a contract, enforceable in equity, may sue to establish his rights thereunder as soon as the other contracting party has repudiated it, notwithstanding the time for full performance may not have arrived. 36 Cyc. 771; Lee v. Decker, 6 Abb. (N. S.) (N. Y.) 392; Hanna v. Mills, 21 Wend. 90, 92; 34 Am. Dec. 216; Miller v. Jones, 68 W. Va. 526, 71 S. E. 248, 36 L. R. A. N. S. 408; Parks v. Monroe, 99 Kan. 368, 161 Pac. 638 and cases cited.

2. It is also contended that the contract is so uncertain that it cannot be specifically enforced, based on the ground that the time for payment is not fixed. In view of the construction we have put upon the contract, this contention is not, we think, tenable. The exact time for payment is not an essential term. It is sufficient, if payment is to be made within a reasonable time. 36 Cyc. 597; 25 R. C. L. 219; Dingman v. Hilberry, 159 Wis. 170, 149 N. W. 761 and cases cited. In Seigne v. Warren Auto Co. 147 Minn. 142 179 N. W. 648, it was held as to a contract to convey real estate, that the agreement to pay grantor "at such time as the grantee might elect," is not so indefinite and uncertain as to avoid specific performance. In Lankton v. Stewart, 27 Minn. 346, 7 N. W. 360, the agreement was that plaintiff should pay "from time to time," that is to say, at such times and in such sums as he saw fit, and it was held that there was no uncertainty which was in the way of specific performance. In Dingman v. Hilberry, supra, an action for

specific performance, it was held that a provision that plaintiff should have such time as he required to pay for the farm, meant that he should pay as he was able; and that his ability to pay was a fact which could be ascertained with sufficient certainty. In Lawler v. Densmore-Compton Bldg. Co., 63 Misc. Rep. 458, 118 N. Y. S. 468, it was held that though a contract to sell does not specify the time of maturity of the deferred payments, which were to be paid out of commissions which the purchaser might earn by making sales for the vendor, equity will enforce it, fixing a reasonable time within which the debt shall mature. These cases illustrate the proposition that equity is not averse to enforcing contracts specifically where the court can fix a reasonable time or determine from the evidence, what that time is.

No other questions are argued. It follows from what we have said that the judgment of the district court must be reversed and remanded with direction to enter judgment for the plaintiffs for $5900 with interest at 6% per annum from February 13, 1920, as prayed in the petition, plaintiffs depositing a warranty deed and abstract of title showing good title with the clerk of the district court for the benefit of the defendant. Said court may make an order extending the time for payment of said judgment, without bond, for such a reasonable length of time as it may deem just, and make such other orders in said cause as may be necessary or proper not inconsistent with this opinion.

*Reversed and Remanded with Directions.*

Potter, Ch. J., and Kimball, J., concur.

NOTE—See 13 C. J. pp. 631, 684; 36 Cyc. pp. 597, 771; 39 Cyc. pp. 1333, 1331, (1925 Anno) 1535 (1925 Anno) 1223 (1925 Anno)