Lawrence, Respondent, vs. Milwaukee, Lake Shore & Western Railway Company, Appellant.

*February 28 — March 21, 1893.*

*Contracts: Acceptance of  offer: Preliminary negotiations or binding contract?   Time of performance:  Railroads:  Carriage  of  logs: Delay: Pleading: Variance.*

1. The defendant railway company by letter offered to carry for plaint-iff a certain quantity of logs at a certain rate, plaintiff to chain the logs if necessary.   Plaintiff wrote, accepting the offered rate, but saying nothing about chaining the logs.   *Held*, that by accepting the rate without qualification he accepted it with all the condi-tions specified in the offer.

2. In his letter accepting the rate plaintiff stated that he would " be down the first of the week and make out a contract," but no further contract was ever  made, and it appears that neither party thought it necessary, since  plaintiff proceeded to  execute the  contract ex-pressed in the letters, and defendant's general freight agent wrote making inquiries inconsistent with  the  supposition that a contract did not exist.   *Held*, that the letters were not mere  preliminary ne-gotiations but constituted a binding contract, and that in an action for damages on account of a delay in transporting the logs defend-ant could  not be  heard to plead ignorance of the existence of the contract.

Lawrence vs. Milwaukee, Lake Shore & Western R. Co.

3. There being no stipulations as to when plaintiff should have the cars and logs ready for shipment and how soon thereafter they should be shipped, the law implies that those things should be done within a reasonable time.

4. Under the contract plaintiff was to furnish the necessary cars for the transportation of his logs. He notified defendant that the cars were at certain stations on its railroad, where they would be turned over to it by another company. Defendant did not decline to get the cars or claim that plaintiff was bound to make any other delivery of them. *Held,* a sufficient performance on the part of plaintiff.

5. The complaint alleged that the contract was made about December 11, 1889, that defendant agreed therein to transport the logs at once, that it failed to commence such transportation until four weeks after the time agreed upon, and that by reason of such delay plaintiff sustained damages in loss of his own time and the time and services of his employees and teams, and in the cost of their support during said delay, etc. The evidence was that plaintiff commenced hauling the logs to the railroad about January 3, 1890, and, because defendant was not ready to receive them on the cars, was obliged to pile them on skidways at extra expense; that defendant commenced to transport the logs on January 29, and completed the shipment on April 22; and that plaintiff had finished the hauling on March 26, and from that time to April 22 was compelled to employ men and teams to load the logs which had been skidded and piled before the shipment commenced. *Held,* that the variances between the complaint and the evidence were immaterial, and that plaintiff was not limited in his recovery to damages suffered during the four weeks after December 11, 1889.

APPEAL from the Circuit Court for *Winnebago* County. This action was brought to recover damages for the non-performance by defendant railway company of an alleged contract to transport certain logs for plaintiff. The contract is stated in the complaint as follows: " That on or about December 11, 1889, the defendant and plaintiff duly entered into a mutual, valid agreement, wherein and whereby the defendant agreed to transport at once by rail, on its railroad, from Kempster to the city of Oshkosh, both being shipping stations on the line of the defendant

railroad, about three million feet of logs for the plaintiff, on Paine Lumber Company's cars, at five cents per 100 pounds, with minimum weight of 35,000 pounds to a car, excess over 35,000 pounds at the same rate; and the plaintiff agreed to have said logs which he then and there had for shipment at said Kempster, as aforesaid, transported by the defendant, as aforesaid, from Kempster to Oshkosh, as aforesaid, upon the terms and conditions aforesaid." The breach of the contract alleged is the failure of the railway company to commence such transportation until four weeks after the time agreed upon, to the damage of the plaintiff. Full performance of the contract by plaintiff is alleged. The damages occasioned by such delay are thus alleged in the complaint: " That by reason of the nonperformance of said agreement by the defendant on its part, as aforesaid, and such delay in the commencement of the transportation of said logs and the transportation thereof, as aforesaid, the plaintiff suffered and sustained great damages, to wit, in the delay in getting said logs to said city of Oshkosh, the loss of his own time, by his employees, teams, and equipments being idle during said delay, as aforesaid, and the loss of the services thereof, for expenditures and disbursements made and to which he was subjected for the maintenance and support of his employees and teams during said delay, all arising and accruing from such delay, as aforesaid; that by reason thereof, as aforesaid, the plaintiff suffered and sustained damages to a large amount, to wit, in the sum of six hundred and fifty dollars."

If any contract was made, it is contained in two letters which passed between the parties. The first of these is as follows: " Milwaukee, December 10, 1839. *S. B. Lawrence, Esq.*, Oshkosh, Wisconsin — Dear Sir: Referring to your call at our office last Saturday, relative to rate on about three million feet of logs from Kempster to Oshkosh, we are willing to name you rate on logs from point

above mentioned to Oshkosh when loaded in Lake Shore cars, five cents per 100 pounds, minimum weight 28,000 pounds; excess over 28,000 pounds at same rate. If loaded in Paine Lumber Co.'s cars, five cents per 100 pounds, with a minimum of 35,000 pounds; excess over 35,000 pounds at same rate. This is the rate you asked for, and rate which you said would be satisfactory to you. If you will make the shipments, please advise us promptly, that we may prepare to move them. Of course it is understood that should it be necessary to chain the logs in order to render the transportation of same safe, that you will be willing to do so. Yours truly, E. J. SEYMOUR, A. G. F. A." The second letter, which is a reply to the first, is as follows: "Oshkosh, December 13, 1889. *E. J. Seymour* — Dear Sir: In reply to your letter quoting rates I will say that I accept the rate you give on P. L. Co. cars. I will be down the first of the week and make out a contract. Truly yours, S. B. LAWRENCE. Five cents per 100 min. 35,000 pounds logs Kempster to Oshkosh." E. J. Seymour was the assistant general freight agent of the railway company duly authorized to make the alleged contract.

On December 20, 1889, the general freight agent of the railway company, C. L. Wellington, wrote to plaintiff, acknowledging the receipt of the above letter of December 13, 1889, accepting rate named by the company on logs from Kempster to Oshkosh, loaded on Paine Lumber Co.'s cars. It contains the clause: "You say in that letter that you will be down the first part of the week and make contract. We would like some information from you as to when you will want to commence shipping, and how many Paine lumber cars you are going to put in the service, and how many you will want to ship per day, and also the amount of lumber you will move." It does not appear that the plaintiff answered this letter directly, but by a letter bearing date January 6, 1890, the Paine Lumber Co., acting for plaintiff, who it

seems was sick, notified the railway company as follows: "We desire to put twenty of our log cars in service on your line between Kempster and Oshkosh for hauling logs which will be loaded at Kempster by *S. B. Lawrence.* We have four of the cars here, which we can turn over to your company here; the rest of them are up north. We have instructed the Northwestern to deliver them to you at Watersmeet. They may find it convenient to deliver some of them to you at Appleton. As these twenty cars are delivered, it will make on your road thirty of our cars. Ten we wish to keep in service on lumber between Whitcomb and that vicinity and Oshkosh, and twenty in the log trade, as above stated." The railroad of the defendant company extends from Oshkosh north to Watersmeet, passing through Kempster, about 110 miles north of Oshkosh and eighty miles south of Watersmeet. Its railway also extends to Appleton. The Chicago & Northwestern Railway, which is the "Northwestern" mentioned in the above letter of January 6, 1890, also passes through Oshkosh, Appleton, and Watersmeet.

The letter of January 6th was addressed to "W. H. Vandergrift, Supt. M., L. S. & W. Railroad, Kaukauna, Wis.," who replied to it by letter, under date of January 7th, addressed to the "Paine Lumber Co., Oshkosh," as follows: "Yours, 6th inst., relative to putting twenty of your cars into log service between Kempster and Oshkosh, has been referred to Geo. T. Bidwell, Gen'l Supt., Milwaukee, who no doubt will write you regarding it." It does not appear that the general superintendent took any action in the matter.

Plaintiff commenced hauling his logs to the railroad at Kempster January 3d or 4th. It was necessary to their proper and economical shipment that the logs should have have been loaded upon the cars directly when so hauled. Because the railway company did not then receive the logs

upon the cars the plaintiff was compelled to pile the same on skidways, to get them out of the way.

After considerable correspondence between the Paine Lumber Company on behalf of the plaintiff and the railway company, commencing January 13th, the railway company, on January 21st, signified its willingness to take up the cars of the lumber company and transport plaintiff's logs upon them to Oshkosh, and afterwards did so, commencing about January 29th, and completing the shipment April 22, 1890. Plaintiff finished putting in his logs at Kempster March 26th. The railway company shipped plaintiff's logs as they were hauled to the railroad until the haul was completed, March 26th, and after that time shipped the logs which had been thus skidded and decked or piled before the shipment commenced. Hence, in addition to skidding and piling such logs, plaintiff was compelled to employ men and teams from March 26th to April 22d to load them on the cars, which would not have been necessary had they been shipped as fast as hauled to the railroad.

The only witness who testified as to the amount of damages estimated the extra cost of skidding and piling the logs at $150, and testified that the expense of keeping the men and teams to load logs from March 26th to April 22d was a little over $500.

The court instructed the jury that the two letters of December 10 and 13, 1889, constituted a valid contract, under which the railway company was bound to transport the logs to Oshkosh within a reasonable time after their delivery at Kempster and the furnishing by the plaintiff of the necessary Paine Lumber Company cars on which to ship the same. The court submitted it to the jury to determine what was such reasonable time, and instructed them that plaintiff was entitled to recover such damages as were occasioned by any unreasonable delay of the railway com-

Lawrence vs. Milwaukee, Lake Shore & Western R. Co.

pany to perform its contract, together with interest thereon from the commencement of the action.

The jury returned a general verdict for plaintiff, and assessed his damages at $550. A motion on behalf of defendant for a new trial was denied, and judgment for plaintiff entered pursuant to the verdict. The defendant appeals from the judgment.

· For the appellant there was a brief by *Alfred L. Cary* and *Bradley G. Schley*, attorneys, and *Charles Barber*, of counsel, and oral argument by *Mr. Cary* and *Mr. Barber*. They contended, *inter alia*, that the letters claimed to constitute the contract were intended by the parties only as preliminary negotiations, and care should always be taken not to construe such letters into an agreement. *Moulton v. Kershaw*, 59 Wis. 316–321; *Lyman v. Robinson*, 14 Allen, 242; *Martin v. N. W. Fuel Co.* 22 Fed. Rep. 596; *Honeyman v. Marryatt*, 6 H. L. Cas. 112; 3 Am. & Eng. Ency. of Law, 852. To constitute a contract by the making and acceptance of a proposition, the acceptance must be an unqualified one of the whole proposition. *Northwestern I. Co. v. Meade*, 21 Wis. 474; *Baker v. Holt*, 56 id. 100; *Minneapolis & St. L. R. Co. v. Columbus R. M. Co.* 119 U. S. 149.

For the respondent there was a brief by *Bouck & Hilton*, and oral argument by *Gabe Bouck*. They argued, among other things, that the acceptance of an offer without objection or condition binds the party accepting, and the party making the offer has the right to understand that the acceptance was according to the terms of the offer. Lawson, Rights, R. & Pr. sec. 2231; *Drew v. Edmunds*, 60 Vt. 401; *Hart v. Bray*, 50 Ala. 446. Even if the defendant's offer had proposed that the agreement should be put in writing, it still would have been a binding and valid contract. *Lewis v. Brass*, 3 Q. B. Div. 667; *Rossiter v. Miller*, 3 App. Cas. 1124; *Bonnewell v. Jenkins*, 8 Ch. Div. 70; *Gibbins v.*

*N. E. Met. Asy. Dist.* 11 Beav. 1; *Pratt v. Hudson R. R. Co.* 21 N. Y. 305; *Allen v. Choteau*, 102 Mo. 309.   .

LYON, C. J.   Seventeen specific errors are assigned and relied upon to work a reversal of the judgment from which this appeal is taken.   Some of these are purely technical, and require little notice.   Those which, if well taken, are deemed material, may well be classified under fewer heads.   It is believed that the determination of the following questions (which will be considered in their order) is decisive of this appeal:  (1) Do the letters of December 10 and 13, 1889, constitute a valid contract between the parties?   If so, then (2) did plaintiff perform his part of such contract?   (3) Is there any testimony tending to prove that the railway company delayed unreasonably to transport the logs?   (4) Can the plaintiff be allowed, under his complaint and proofs, to recover any damages?

1. In the letter of December 10, 1889, the defendant railway company offered to ship for the plaintiff about 3,000,000 feet of logs from Kempster to Oshkosh, on the cars of the Paine Lumber Company, at the rate of five cents per 100 pounds, with a minimum to each car of 35,000 pounds.   If necessary to chain the logs for safety, a part of the offer was that plaintiff should chain them.   Whether it became necessary to do so or not does not appear.   Such offer contained all necessary terms of a perfect contract except express stipulations as to the time plaintiff should have the cars and logs ready for such shipment, and how soon thereafter the logs should be shipped.   In the absence of such stipulations, the law writes in the offer that those things should be done within a reasonable time.   As to when the law will imply stipulations in a contract which are not expressed therein, see *Seaman v. Ascherman*, 57 Wis. 547.   By the letter of December 13th the plaintiff · accepted the offered *rate*.   If such acceptance covers the

entire offer, the two letters constitute a valid and binding contract.

The plaintiff accepted the offered *rate*, but said nothing about chaining the logs if necessary. It is argued that his omission to accept specifically the requirement as to chaining the logs prevents the two letters from constituting a contract. The substance and legal effect of the offer were that, if plaintiff would, within a reasonable time, furnish Paine Lumber Company cars, and load them with his logs at Kempster, and chain the logs if necessary, the railway company would, within a reasonable time thereafter, transport such logs to Oshkosh at the rate of five cents per 100 pounds,— no car to contain less than 35,000 pounds. By accepting the *rate* without qualification the plaintiff necessarily accepted it with all the conditions specified by the railway company, one of which was the condition relative to chaining the logs.

But it is also argued that because plaintiff in his letter of December 13th said, "I will be down. the first of the week and make out a contract," it is evident he did not intend or suppose that such letter perfected a contract for the shipment of the logs, binding upon both parties. Why not? True, he contemplated the execution of a more formal written contract, but it does not appear that either party contemplated the insertion therein of any stipulation upon which their minds had not already met, and which was not substantially inserted in the two letters. Neither does it appear that either party believed any further writing was necessary to create a contract between them. Certainly the plaintiff did not, for without any further writing he proceeded to execute the contract expressed in the two letters on his part, and demanded its execution by the railway company. It also very satisfactorily appears that the railway company was of the same opinion, for in the letter of Mr. Wellington of December 20th he calls for informa-

tion as to when the plaintiff desires to begin shipping logs, how many cars he was going to put in the service, how many logs he would want to ship per day, and the amount to be shipped. Some of these inquiries, especially that as to "how many Paine lumber cars you are going to put in the service," are quite inconsistent with the idea that Mr. Wellington did not suppose a contract existed.

The clause in the letter of December 10th which reads, "If you will make the shipment, please advise us promptly, that we may prepare to move them " (that is, the logs), is merely a request that the plaintiff advise the railway company promptly whether he accepts the offer contained in the letter. The plaintiff complied with such request.

With due regard to the admonition contained in the opinion in *Lyman v. Robinson*, 14 Allen, 254, quoted approvingly by the late Mr. Justice TAYLOR in *Moulton v. Kershaw*, 59 Wis. 316, to the effect that care should always be taken not to construe as an agreement letters which the parties intended only as preliminary negotiations, we are yet impelled to the conclusion that, in any admissible view of the letters of December 10th and 13th, taken together they constitute a contract binding upon the parties, and hence that the learned circuit judge did not err when he so instructed the jury as matter of law.

2. Did the plaintiff perform his part of the contract? It was his duty, under the contract, to furnish the necessary cars for the transportation of his logs from Kempster to Oshkosh. It is claimed that it was his duty actually to deliver the cars to the railway company. The company was notified, in substance, on January 6th, in behalf of plaintiff, that twenty Paine Lumber Company cars, to be used in the business, were at Watersmeet, Appleton, and Oshkosh, which he desired the railway company to take from the Northwestern Company, in whose possession they were, and that the latter company had been directed to

turn them over to defendant company. The latter company did not decline to get the cars, or claim that the plaintiff was bound to make any other delivery of them, or that there was the slightest difficulty in getting them. It simply failed to accept the cars and commence the shipment of the logs until the last days of January, and has given no satisfactory or sufficient reason for such failure. We conclude the plaintiff was not in fault for failure to furnish cars on which to ship his logs to Oshkosh.

3. Did the railway company delay unreasonably to transport plaintiff's logs? It is claimed it did not, for the reason that up to January 13th, and probably to a later date, the company did not understand that any contract had been made, and that in this matter it was misled by the promise of plaintiff in his letter of acceptance that he would "be down the first of the week and make out a contract." We have seen that a contract was in fact made by the two letters of December 10th and 13th, and was recognized as such by the company as early as December 20th. We think the railway company cannot be heard to plead ignorance of the existence of the contract, and that, if it failed unreasonably, after receiving the notice of January 6th, to obtain the cars at Oshkosh, Appleton, and Watersmeet, offered by plaintiff, it is liable to respond in damages for the consequences of such delay. The jury necessarily found the railway company guilty of such delay, for they were instructed that if there was none the plaintiff could not recover.

4. It is further claimed that, conceding the accuracy of the legal propositions above stated and held, still, under the averments of the complaint and the proofs, the plaintiff is not entitled to recover. The complaint alleges the making of the contract about December 11, 1889, that the railway company agreed therein to commence the transportation of the logs *at once,* and that the company failed to do so for four weeks thereafter. It is argued that the four weeks

expired before the railway company was in default, and hence that for want of proper averments there can be no recovery for damages suffered by plaintiff after the expiration of such four weeks. This is too technical. It ignores the existing rule which demands a liberal construction of pleadings with a view to substantial justice. A contract substantially like that alleged is proved, and a breach thereof by the railway company, with resulting damages to plaintiff, is, on sufficient evidence, established by the verdict of the jury. Whatever variances there may be between averments and proof are quite immaterial. They can prejudice no one, and ought to be disregarded. No analysis of the complaint will be attempted. Perhaps it might be improved, but we think it sufficient to inform the railway company of the cause of action upon which the verdict and judgment are based. Upon the whole case we are satisfied that they should not be disturbed.

*By the Court.*— The judgment of the circuit court is affirmed.