HUNT ET AL., APPELLANTS, *v.* S Y CATTLE CO., RESPONDENT.

(No. 5,852.)

(Submitted March 2, 1926. Decided March 16, 1926.)

[244 Pac. 480.]

*Contracts—Oral Agreements—Failure to Reduce to Writing as Stipulated—Effect—Alteration of Written Contract by Executed Oral Agreement—Pleading—Appeal and Error.*

Contracts—Written Contract—Alteration by Executed Oral Agreement—Pleading.

   1. Where plaintiff in an action on a written contract relies upon an alteration thereof by a subsequent executed oral agreement, he must plead it; in the absence of such a pleading, testimony of the alteration is inadmissible.

Appeal and Error—Theory of Case.

   2. The theory upon which a party tries his case in the district court may not be changed by him on appeal.

---

2. See 2 R. C. L. 79.

[75 Mont. 594.]

*Same—Supreme Court Decision—How Language to be Interpreted.*
    3.  Language used by the supreme court in the decision of a case must be interpreted in the light of the facts presented in the case.

*Contracts—Verbal Agreement—Stipulation for Subsequent Execution of Writing—Failure to Reduce to Writing—Effect.*
    4.  Where the parties verbally agree upon the terms of a contract but stipulate that it is not to be binding until put in writing, it does not constitute a binding agreement until reduced to writing; but where they intend that the agreement shall be binding from the time it is made with the understanding that later, when convenient, its terms shall be put in writing and signed as a memorial or record of their contract, failure to thereafter reduce it to writing does not affect its binding force. (Language used in *Hopkins* v. *Paradise H. F. G. Assn.*, 58 Mont. 404, intimating the contrary, overruled.)

*Same.*
    5.  *Held*, under the above rule (par. 4), that where immediately after the expiration of a written contract for the running of cattle plaintiff and defendant verbally agreed on a round-up, that plaintiff should continue taking care of the cattle, nothing being left for further settlement, and that the agreement should be reduced to writing when the round-up was over and it was convenient for them to meet in town, the fact that the writing was not thereafter executed did not render the agreement unenforceable, and the court's action in striking evidence tending to establish it was error.

---

[1]  Contracts, 13 C. J., sec. 835, p. 721, n. 65.
[2]  Appeal and Error, 3 C. J., sec. 618, p. 718, n. 50.
[3, 4]  Contracts, 13 C. J., sec. 100, p. 290, n. 12.  Courts, 15 C. J., sec. 376, p. 970, n. 32.
[5]  Appeal and Error, 4 C. J., sec. 2985, p. 1003, n. 59.  Contracts, 13 C. J., sec. 100, p. 290, n. 12.  Courts, 15 C. J., sec. 357, p. 956, n. 17.

*Appeal from District Court, Custer County; S. D. McKinnon, Judge.*

ACTION by Sherman Hunt and another, copartners operating under the firm name and style of Hunt & White, against the S Y Cattle Company.  From a judgment for a part only of the amount claimed, plaintiffs appeal.  Reversed and remanded, with directions to grant plaintiffs a new trial.

---

4.  Sufficiency of contract by offer and acceptance without execution of contemplated formal instrument, see note in 29 L. R. A. 431.

    Reference by contracting parties to future contract in writing as negativing existence of any present contract, see note in Ann. Cas. 1912B, 130.  See, also, 6 R. C. L. 618.

*Messrs. Loud & Leavitt,* for Appellants, submitted a brief; *Mr. Chas. H. Loud* argued the cause orally.

We understand that it is a general rule that it is competent for the parties to an executory written contract, not under seal, at any time before breach thereof by a subsequent verbal agreement founded upon a sufficient consideration, either to waive altogether or dissolve or annul the previous written agreement or in any manner to add to, subtract from or vary or qualify the stipulations of such agreement and thus take a new or different contract which may be proved by parol, whether it is a substitute for the whole or in addition to or beyond it. This is the rule which was announced by Lord Denman in *Goss* v. *Nugent*, 5 Barn. & Ad. 65, and the same has been generally adopted and followed by the text-book writers and the courts of this country. (2 Elliott on Contracts, sec. 1640; *Emerson* v. *Slater*, 22 How. 28, 16 L. Ed. 360 [see, also, Rose's U. S. Notes]; *Grandin* v. *United States*, 22 Wall. 496, 22 L. Ed. 858; *Harris* v. *Murphy*, 119 N. C. 34, 56 Am. St. Rep. 656, 25 S. E. 708; *George Cummings* v. *Arnold*, 3 Met. (Mass.) 486, 489, 37 Am. Dec. 155; *Stearns* v. *Hall*, 9 Cush. (Mass.) 31, 34; *Thomas* v. *Barnes*, 156 Mass. 581, 31 N. E. 683; *Hastings* v. *Lovejoy*, 140 Mass. 261, 54 Am. Rep. 462, 2 N. E. 776; *Brown* v. *Everhard*, 52 Wis. 205, 8 N. W. 725.)

It may be contended that this general rule has never been adopted in Montana, and that if it ever was, it has been changed by statute. We concede that this rule has been changed and narrowed by the provisions of section 7569, Revised Codes of 1921, which is as follows: "7569. A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise." Under this statute, an oral agreement must be executed in order to modify, change or vary the terms of a written contract.

We understand the rule to be that unless the making of the written contract is a condition precedent, the contract is valid

and is enforceable even though after it is written it is not signed, provided that the terms of the contract are in all respects definitely understood and agreed upon. (*Montague* v. *Weil,* 30 La. Ann. 50.) This court has announced the same rule in *Long* v. *Needham,* 37 Mont. 408, 96 Pac. 731; see, also, *Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209, 43 Am. St. Rep. 757, 29 L. R. A. 431, 39 N. E. 75; *Levin* v. *Saroff,* 54 Cal. App. 285, 201 Pac. 961, 963; *Blake* v. *J. Neil's Lumber Co.,* 111 Minn. 513, 127 N. W. 450; *Post* v. *Davis,* 7 Kan. App. 217, 52 Pac. 903; *Blaney and Morgan* v. *Hoke,* 14 Ohio St. 292; *Green* v. *Cole* (Mo.), 24 S. W. 1058; 9 Cyc. 282; 13 C. J., sec. 100, p. 290; *Allen* v. *Chouteau,* 102 Mo. 309, 14 S. W. 869.

We believe that the evidence which was stricken out, together with the other undisputed facts appearing in the record, are sufficient in and of themselves to clearly establish an executed oral agreement between the parties hereto, the effect of which is to bring the case squarely within the provisions of section 7569. Even though this conclusion may be questioned, the lower court had no right to strike this testimony from the record and thereby in effect refuse to submit to the jury for its determination the question of fact as to whether or not there was an executed oral agreement. (*Wharton* v. *Stoutenburgh,* 35 N. J. Eq. 266; *Roberts* v. *Sinnott,* 55 Mont. 369, 177 Pac. 252; *McKinley* v. *Macbeth,* 113 Minn. 148, 129 N. W. 216, 389.)

*Mr. Daniel L. O'Hern,* for Respondent, submitted a brief.

Conceding, only for the purpose of answering the argument, that there was a completed or executed oral contract modifying the previous written contract, we still contend the complaint is fatally defective in not stating a cause of action thereon.

The rule has been repeatedly announced and confirmed by courts and text-writers as follows: "Where an agreement has been modified by a subsequent agreement, plaintiff must declare on it as modified, without reference to the terms of the original contract which has been dispensed with; and the contract as modified must be distinctly pleaded, although if the

original contract was not entirely superseded by a subsequent modification, it, together with such modification, constitutes the basis of the action." (13 C. J., p. 721; *White* v. *Soto,* 82 Cal. 654, 23 Pac. 210; *Swank* v. *Barnum,* 63 Minn. 447, 65 N. W. 722; *Pioneer Sav. & L. Co.* v. *Kasper,* 7 Kan. App. 813, 52 Pac. 623; *Carman* v. *Harrah,* 182 Mo. App. 365, 170 S. W. 388.) The last case cited holds that where a new contract is substituted for a prior one, the remedy is on the new contract, regardless of whether its stipulations have been performed. (*Ottman* v. *Fletcher,* 23 Abb. N. C. 430, 10 N. Y. Supp. 128; *Milner* v. *Earl Fruit Co.,* 40 Idaho, 339, 232 Pac. 581.) There was no issue tendered on the question of a modification of the written contract. (See, also, *Williams* v. *Mt. Hood Ry: & Power Co.,* 57 Or. 251, Ann. Cas. 1913A, 177, 110 Pac. 490, 111 Pac. 17.) In the case last cited the plaintiff contended that there was an acquiescence or acceptance of the terms of the contract by the defendant. The court held that those questions would all be for the consideration of the jury if they were within the issues and the court then states: "But no such issue is tendered, and the evidence was not offered for that purpose, but to prove a subsequent modification of the contract, which is not alleged; and therefore it was incompetent for either." (To like effect are the following cases: *Dermott* v. *Jones,* 2 Wall. (U. S.) 1, 17 L. Ed. 762 [see, also, Rose's U. S. Notes]; *McKay* v. *Fleming,* 24 Colo. App. 380, 134 Pac. 159, 162; *Gosline* v. *Albro-Clem. El. Co.,* 174 Mass. 38, 54 N. E. 351.)

Corpus Juris in speaking of the effect of a subsequent agreement lays down the rule, supported by many authorities, as follows: "If plaintiff declares on a contract as originally made, and his evidence reveals that the original contract has been superseded or materially modified by a valid subsequent agreement, the variance will be fatal to a recovery. So where a written contract is declared on, the party will not be allowed to prove a subsequent parol modification." (13 C. J. par. 925; *Klepner* v. *O. J. Lewis Merc. Co.,* 159 Fed. 94, 86 C. C. A. 284;

*Pioneer Sav. etc. Co.* v. *Kasper,* 7 Kan. App. 813, 52 Pac. 623; *Tumbridge* v. *Read,* 22 N. J. 764, 51 Hun, 644, 3 N. Y. Supp. 908.) We maintain that those authorities are decisive on the questions to which they are pertinent and conclude the plaintiffs from prosecuting an appeal from the judgment in this case.

We contend that the ruling of the lower court, based upon the case of *Hopkins* v. *Paradise Heights Fruit Growers' Assn.,* 58 Mont. 404, 193 Pac. 389, striking from the record the testimony of the plaintiffs relative to an express oral agreement, was correct and justified by the record.

MR. JUSTICE STARK delivered the opinion of the court.

The plaintiffs, copartners under the name of Hunt & White, brought this action against the defendant, a corporation, to recover the sum of $5,346.15, alleged to be due them for running, pasturing and grazing certain cattle for the defendant on their range in Custer county.

The complaint alleges that between April 1, 1923, and June 15, 1923, the defendant turned over to plaintiffs 2,300 head of cattle, under an agreement that they were to be grazed and cared for by them until the fifteenth day of October, 1923. Before the cattle were turned over to the plaintiffs, the parties had a verbal agreement concerning them which was subsequently reduced to a written contract and duly executed on June 29, 1923. Among other things, this contract provided that the cattle should be rounded up for redelivery to the defendant whenever it wished, provided, however, that they should all be gathered up and redelivered not later than October 15, 1923.

It is alleged that all of said cattle were rounded up, gathered, and ready for delivery to defendant prior to October 15, 1923, and the charges for the care of all of them, except 22 head of cows and 158 head of steers, duly paid, and the balance due to plaintiffs for the grazing of these cows and steers under the contract of June 29, 1923, is alleged to be $339.40. The com-

plaint then sets out: "That at the time the said cattle were rounded up and gathered as aforesaid, and on or immediately prior to the fifteenth day of October, A. D. 1923, it was further agreed by and between the defendant corporation and the plaintiffs that, in addition to the 22 head of cows, which are hereinbefore referred to, the plaintiffs were to retain 865 head of said cattle, and which, together with the 22 head of cows, were to be run, cared for, pastured, and grazed by the said plaintiffs for the said defendant from October 15, 1923, in accordance with said agreement made on or about October 15, A. D. 1923, aforesaid, and as is hereinafter alleged." And in the next paragraph says: "That under and by virtue of the said agreement, made and entered into on the fifteenth day of October, A. D. 1923, it was expressly understood and agreed between the plaintiffs and the defendant corporation that the plaintiffs should continue to run, care for, pasture, and graze the said 865 head of cattle and the 22 head of cows," following which allegation the other terms of the contract are stated, including the length of time it was to continue, the method of gathering the cattle, the compensation to be paid and the time of payment, and that under said contract the plaintiffs did run, care for, pasture and graze the 22 head of cows from October 15, 1923, to January 15, 1924, and 865 head of cattle from October 15, 1923, up and including the first day of October, 1924. The facts showing plaintiffs' compliance with all the terms, provisions and conditions of the contract of October 15, 1923, are set out in detail, and judgment is asked against the defendant for the sum of $399.40, alleged to be due under the original contract, and $5,006.75, alleged to be due under the contract of October 15, 1923, with interest.

The defendant's answer admitted the contract of June 29, 1923, and that it agreed to pay the plaintiffs for the running, caring for, pasturing and grazing of 2,300 head of cattle until the termination of said agreement, as alleged in the complaint, alleged that prior to October 15, 1923, approximately 2,120 head of cattle were rounded up ready for delivery to the de-

fendant, and that the full amount due to the plaintiffs for the running, pasturing and grazing thereof was paid to the plaintiffs, and denied all the other allegations of the complaint.

The cause was tried to a jury. To sustain the allegations of their complaint, the plaintiffs introduced evidence tending to establish the fact that, under the written contract of June 29, 1923, there was due to them from the defendant the sum of $339.40 for the grazing of the 22 head of cows and 156 head of steers.

With reference to the transactions between the parties after the expiration of the term of the written agreement of June 29, 1923, the plaintiff Sherman Hunt testified that, prior to the round-up of the cattle in October, 1923, for delivery to the defendant, as provided in the written contract, he had a conversation with one Colvin, the manager of the defendant, in which the latter said he wanted the plaintiffs to keep about 1,000 head of steers for another year, but no final arrangements were then made; that some time between the 1st and the 15th of October, 1923, when plaintiffs and defendant were engaged in rounding up the cattle, with their headquarters near the head of Spring Creek, the witness sent for Colvin to come over and complete the arrangements for keeping the cattle mentioned in the previous conversation between them. The manager came over as requested, and stated that the defendant did not have feed for the cattle at the home place, and thereupon it was agreed between these parties that the plaintiffs should keep the portion of the cattle to be selected by the plaintiffs and a representative of the defendant company, as the ones that would winter there on plaintiffs' range; that for such services the plaintiffs should receive fifty cents per head per month, one dollar per head to be paid in advance, one dollar per head on January 1, 1924, and on May 29, 1924, all that was then earned was to be paid, and that the balance should be paid when final delivery of the cattle was made to the defendant.

The plaintiffs were also running certain cattle on their range known as the S H cattle, and it was agreed that the cattle left on the range by the defendant under this last-mentioned arrangement should be rounded up at the time the S H beef cattle were rounded up the following year. This witness also testified to other details of the agreement, and stated that immediately following the arrangement he and the defendant's manager went to the plaintiff White, who was at a corral about forty feet distant, recited to him the agreement which they had made, and that he then assented thereto. The witness then detailed the rounding up of the cattle, the selection by representatives of the parties of the ones which were to be turned back and kept by the plaintiffs under the new arrangement, and facts tending to show that plaintiffs had complied therewith, but that defendant had not paid them therefor.

On the cross-examination of this witness, referring to the oral agreement of October, 1923, the following questions were asked and answers given: "Q. You saw Mr. Colvin quite often subsequently to the entering into this oral contract; was anything ever said about reducing the terms of the oral agreement to writing? A. Yes, sir. Q. And did you have any agreement that it would be reduced to writing? A. We did. Q. Where was that agreement made? A. At the head of Spring Creek. Q. What was said about reducing the oral agreement to writing? A. We would just put this agreement into writing as soon as the round-up was over and we found out how many cattle that there was that was left with us, and it was convenient for us to meet in town."

The plaintiff White, called as a witness, corroborated the testimony of the plaintiff Hunt, and other testimony was given tending to show plaintiffs' complete performance of the agreement of October 15, 1923.

At the close of plaintiffs' testimony, counsel for defendant made the following motion: "Comes now the defendant and moves the court to strike all testimony in the record in rela-

tion to any conversations, transaction, contract or agreement in relation to the running of any livestock by the plaintiffs for the defendant on or subsequent to the fifteenth day of October, 1923, * * * for the reason that it appears from the uncontroverted testimony of both Sherman Hunt and Smith White, the plaintiffs in this action * * * that said alleged agreement of, on or about October 15, 1923, * * * was to be reduced to writing and signed and executed by the respective parties to said proposed written agreement, to-wit, Sherman Hunt and Smith White, and the said S Y Cattle Company by Ben Colvin, its manager; * * * that it further appears that said agreement was never reduced to writing as contemplated by the respective parties to the proposed contract, and therefore the plaintiffs cannot recover under the said alleged contract for the reasons hereinbefore recited,'' which motion was sustained.

The defendant did not introduce any evidence. The case was submitted to the jury, which returned a verdict in favor of plaintiffs for $339.40, upon which judgment was entered. Plaintiffs moved for a new trial, which was denied, and they have appealed from the judgment.

Counsel for the plaintiffs have made eight assignments of error in their brief, the first of which is that the court erred in sustaining defendant's motion to strike out all of the testimony relating to the oral agreement had on, or immediately prior to, October 15, 1923. The other seven relate to the giving or refusal to give certain instructions, but all are dependent upon and grow out of the legal questions involved in the first assignment, so they will all be treated together.

Counsel for plaintiffs first contend that the stricken testimony [1] should have been allowed to remain in the record, on the theory that it tended to establish an alteration of the written contract of June 29, 1923, by an executed oral agreement as permitted by section 7569, Revised Codes of 1921. A sufficient response to this contention is that the complaint does not plead such an alteration. Our view of the complaint is that

it states two grounds of recovery; one for a balance alleged to be due under the written contract, and the other under the oral agreement of October, 1923.  As we read the record, that is [2]   the theory upon which plaintiffs tried the case in the lower court, and they may not change that theory on appeal. (*O'Hanlon* v. *Ruby Gulch Min. Co.,* 64 Mont. 318, 209 Pac. 1062.)

In passing upon this motion to strike, the trial court relied [3, 4]   entirely upon the decision of this court in *Hopkins* v. *Paradise Heights Fruit Growers' Assn.,* 58 Mont. 404, 193 Pac. 389, and particularly the portion thereof which reads: ''It is a general rule that, when it is a part of the understanding between the parties that the terms of their agreement are to be reduced to writing and signed by them, their assent to its terms must be evidenced in the manner agreed upon or it does not become a completed contract.''  If this declaration is to be taken literally, and the rule therein announced strictly applied to all cases, then the ruling of the district court in striking out this testimony was correct.

Language used in the decision of a case must be interpreted in the light of the facts presented in the case where the language is used.  That quoted from the opinion in the *Hopkins Case* does not seem to be limited in its scope to a situation like the one presented by the particular facts under consideration. A re-examination of the record in that case discloses that the facts therein were sufficient to justify the court in holding that it must have been the understanding of the parties to the agreement there under consideration that the same should not be binding upon them, and so become effective as a contract, until such time as its terms had been reduced to writing and signed by them, and that this had not been done.  If the language quoted had been limited to a declaration that under such circumstances the assent of the parties to their agreement could only be established in the manner agreed upon—that is, by a written instrument—it would not be subject to criticism,

for such is the law. That it was not the intent of the court to go further, and that the language was inadvertently used, is manifest from a consideration of the authorities cited to sustain it, and attention is now directed to them.

The first case cited by the court is *Spinney* v. *Downing*, 108 Cal. 666, 41 Pac. 797, from which the language of the *Hopkins Case* is taken almost *verbatim*. In support of this declaration the California court cited three cases, one of them being *Ambler* v. *Whipple*, 20 Wall. 546, 22 L. Ed. 403 [see, also, Rose's U. S. Notes], in which case the court, considering the effect of a written instrument which had been signed by one of the contracting parties but not by the other, and which was sought to be enforced against the party who had not signed, said: "It is clearly on its face a paper which requires the signature of both parties to make it binding on either."

The next authority cited in *Spinney* v. *Downing* is *Fuller* v. *Reed*, 38 Cal. 99. The court was there considering an agreement concerning the sale of real estate. The parties had been in conference on the 10th of March, and had reached an understanding concerning most of the details of their agreement, and had arranged to meet on the following morning, complete their arrangements and reduce their contract to writing. The defendant in the action failed to meet with the plaintiff therein as agreed, and the latter brought suit claiming that the previous negotiations had resulted in the formation of a contract. In passing upon this contention the court said: "Regarding alone all the testimony in behalf of plaintiff as uncontroverted, no contract is shown to have been completed or executed between the parties; something remained to be done by each of the parties to consummate the contract, which appears never to have been accomplished. Clearly, neither of the parties understood, from what transpired between them on the afternoon of the 10th, that any such agreement had been by them then consummated as to vest in either a legal interest or right. They understood that something remained to be done to vest

such legal interest; that there was to be some further assurance."

The next case cited as authority in *Spinney* v. *Downing* is *Morrill* v. *Tehama M. & M. Co.,* 10 Nev. 125. The court there declared that the legal principle upon which its decision was based was: "That where parties enter into any agreement, and the understanding is that it is to be reduced to writing, or if it is already in a written form, that it is to be signed before it is acted on or to take effect, it is not binding until it is so written or signed."

It is thus seen that each of the cases cited by the California court to sustain the decision in *Spinney* v. *Downing* is based upon a holding to the effect that it was a part of the agreement between the contracting parties that the same should not become effective so as to bind them to its terms, until it was reduced to writing and signed by them.

The next authority cited in the *Hopkins Case* is *Hodges* v. *Sublett,* 91 Ala. 588, 8 South. 800. In that case the court said: "It is an elementary principle that the mutual assent of the parties to the same thing, and in the same sense, is an essential element of every contract. When the parties orally agree upon the terms of the contract, and there is a final assent thereto, so that no variation can be introduced into the writing except by mutual consent, the mere suggestion or intention to put it in writing at a subsequent time is not, of itself, sufficient to show that they did not mean the parol contract to be complete and binding without being put in writing. Parties may, however, agree verbally upon the terms of a contract, and yet stipulate that it is not to be binding until put in writing; in which case, such stipulation becomes an operative term of the contract, and, unless reduced to writing, and signed by the parties, it does not constitute a complete and binding agreement."

In *Montague* v. *Weil,* 30 La. Ann. 50, next cited in the *Hopkins Case,* the court said: "In a very early case, *Des Boulets* v. *Gravier,* 1 Mart. (n. s.) 420, this court approvingly quotes from Pothier the general rule touching the necessity of re-

ducing the agreement to writing and thus states it: It must appear to be the intention of the parties to make the perfection of the agreement depend on the writing, for if it was merely contemplated to secure a more authentic mode of proof, then neither party can pretend the contract was not complete."

The court next cites *Mississippi etc. Steamship Co.* v. *Swift,* 86 Me. 248, 41 Am. St. Rep. 545, 29 Atl. 1063. In that case the court had under consideration the question whether certain negotiations between the parties which had been partly oral and partly by means of correspondence, and in which mention had been made that the terms of their agreement should be reduced to the form of a written contract, and after a somewhat extended examination of the authorities, said: "From these expressions of courts and jurists, it is quite clear that, after all, the question is mainly one of intention. If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If, on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. The expression of the idea may be attempted in other words: If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed."

In 9 Cyc. 282, which is the final authority cited in the *Hopkins Case,* the text is merely a summarization of the holdings in the above-mentioned cases, all of which, with many others, are cited in the footnotes to sustain the text.

Turning now to the authorities other than those cited in the *Hopkins Case,* we find they are numerous and practically uniform in holding to the general principle announced in the ex-

cerpts from the opinions in the cases above cited. As stated in *Disken* v. *Herter,* 73 App. Div. 453, 77 N. Y. Supp. 300: "Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed." And in *Green* v. *Cole,* 103 Mo. 70, 15 S. W. 317: "It is well-settled law that, where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing does not negative the existence of a present contract. In other words, if the parties make an agreement which they intend shall be binding from the time it is made, effect will be given to it from that time, though they intend it shall be superseded by a more formal written agreement." The following illustrative cases are to the same effect: *Loewi* v. *Long,* 76 Wash. 480, 130 Pac. 673; *Lawrence* v. *Milwaukee L. S. & W. R. Co.,* 84 Wis. 427, 54 N. W. 797; *Lamoreaux* v. *Weisman,* 136 Minn. 207, 161 N. W. 504; *Concannon* v. *Point Min. Co.,* 156 Mo. App. 79, 135 S. W. 988. See, also, 1 Williston on Contracts, sec. 28; 6 R. C. L., p. 618, sec. 39; 13 C. J. 290.

*Hopkins* v. *Paradise Heights Fruit Growers' Assn., supra,* in so far as it conflicts with the rule announced in the foregoing authorities, must be considered as overruled.

Reverting to the testimony in this case which was stricken out on motion of the defendant, it appears that, at the time [5] of the transaction between the plaintiffs and the defendant in October, 1923, at the head of Spring Creek, there was a complete agreement between them concerning the cattle which the plaintiffs were to care for, pasture and graze after October 15, 1923, and that there was nothing left for further settlement.

The statement of the witness Hunt that the parties intended to reduce their oral agreement to writing when the round-up

was over and it was convenient for them to meet in town does not negative the existence of a then existing valid and binding oral agreement, but rather indicates that the written contract, when made, should be viewed by the parties as a convenient memorial or record of their previous contract and not as the consummation of their negotiations. The testimony is that they would reduce to writing the oral agreement then made, not that they would make another agreement and reduce it to writing. This must be so, for it appears that, after making this contract, for a period of twenty days the parties thereto were engaged in rounding up the cattle, designating the class and number which were to be grazed under the contract, and in driving them to the plaintiffs' winter range after the round-up was made.

If, upon a submission of this case to a jury, the plaintiffs should establish to its satisfaction the existence of facts which the testimony stricken out tended to establish, it would entitle them to recover from the defendants upon the contract of October, 1923, notwithstanding its terms were not reduced to writing and signed by the parties. For this reason the court erred in sustaining defendant's motion to strike out this testimony.

Under the views above expressed, the court erred in overruling plaintiffs' motion for a new trial, although in doing so it followed literally a former decision of this court.

The judgment is reversed and the cause remanded to the district court, with direction to grant the plaintiffs a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.