THOMAS, Justice.
The appellee filed a complaint by which he sought an accounting of the transaction to which he and the appellants-Goldfarb and Goldfarb Novelty Company, a corporation were parties, and recovery of monies found to be due him. He asked also for a decree providing that upon payment of $750 the company deliver to him 25 shares of its stock or, in the event it developed that all stock of the corporation had been issued to the individual appellants, they be required to transfer to him that number of shares.
As a basis for this relief, the appellee alleged that he was employed as a traveling salesman by Goldfarb Novelty Company, unincorporated, a firm composed of *847 the appellants, Philip and Saul B. Gold-farb, to sell to retail dealers giftware manufactured or imported by the firm. The employment lasted from June 1947 until August 1954 and during all that period, except the last year, the appellee was given exclusive right to sell the merchandise in ten states. While he was so engaged, continued the appellee, one of the individual appellants became desirous of developing a business in Florida and proposed to the appellee that he and both individual appellants enter the novelty and souvenir business in Florida and organize a corporation for the purpose. After some negotiation, during which one George J. Kotler entered the picture, it was agreed that the capital of the corporation should be $3,000 and that 100 shares of stock of no par value be issued for which the in-corporators were to pay at the rate of $30 per share. Each of the Goldfarbs was to receive 32J^ shares, Kotler 10 shares and the appellee 25 .shares.
It was agreed that the corporation would buy its merchandise from the original firm on credit; that the corporation would pay that firm $2500 each year for “service and expense”; and that goods would be furnished to the corporation by the firm at cost plus ten per cent.
Appellee averred that it was agreed by the incorporators that he be employed as manager and salesman at a salary of $100 per week, and 25% of the net profits which would be paid at the end of the fiscal year. This arrangement was to cover the period of one year, from 1 September 1953 to 31 August 1954. The parties also agreed that Kotler would be employed as co-manager and salesman at a salary which was not stated in the complaint, plus 10% of the net profits to be paid at the close of the fiscal year. As a further consideration for the new employment, the appellee relinquished his right to sell for the firm •in five of the states where he had originally been given exclusive representation, and also surrendered the right to sell in a sixth state except for two accounts. Release of this territory, he charged, reduced his annual income to the extent of $5,000.
All the plan was launched, asserted the appellee, but a month before the expiration of the year, during which the appellee was to serve as manager and salesman, he was excluded from the premises of the corporation.
Parenthetically, Kotler was not a party to this litigation so there will be no further reference to him.
The appellee represented that he had fully performed, and he charged that the corporation had violated the terms .of the agreement by failing to account for the net profits and pay him his share of them, and had not paid his “salary for the last two weeks of said fiscal year.” He estimated the profits amounted to $19,000 and he claimed 25% of that sum, or $4,750, and $200 for unpaid salary.
The appellee further alleged that he had repeatedly called upon the defendants for satisfaction and had offered to pay $750 for the stock he was to receive, but all his efforts had been unavailing.
The answers filed by the defendants were, in effect, general denials of the salient allegations of the complaint.
In the corporation’s answer, however, it was admitted that the four men had agreed to form the corporation and to distribute the stock as appellee had alleged. The answer contained the allegation that appellee had not paid for his stock, that he had worked during the time alleged, except that he was absent for several weeks during the period he was receiving compensation. It was charged that he voluntarily terminated his services. The corporate defendant denied any indebtedness to appellee but admitted it had not paid to appellee a percentage of its net profits. In an amendment this appellant claimed damages it suffered by reason of the ap-pellee having entered direct competition while he was absent from his position.
*848 To like effect' was the ’ answer of the appellants-Goldfarb.
We have examined the motions to dismiss and in them were raised only questions of jurisdiction of the subject matter and person and the sufficiency of the process or service. We have not discovered in these motions or the answers any specific basis for the present challenge that the arrangement was unenforceable because the negotiations did not culminate in the execution of a written contract.
Considering the complaint and answers together, it is clear that the capital stock of 100 shares was to be allotted in a certain way and that the plan was executed, except, of course, the 25 shares which the appellee now claims; that the corporation proposed to engage in the sale of novelties manufactured or imported by the 'Goldfarbs in New York and did; that the appellee was to do certain work for the corporation and did.
It seems to us in this state of the record, we are not obliged to explore or discuss the law with reference to agreements that may not be enforced because they never progressed beyond the stage of negotiations or preliminary discussion. The efforts of the parties to reduce their arrangement to a formal contract failed but we are unaware of any agreement that no one should be bound until a written contract had been executed; and the parties proceeded with the venture nonetheless. Hunt v. S. Y. Cattle Co., 75 Mont. 594, 244 P. 480.
The dispute here may be resolved, we think into pure questions of fact, namely, whether the appellee was discharged or voluntarily severed his relations with the corporation; whether or not he was entitled to compensation for the last two weeks of the period; whether or not he was dilatory in requesting transfer to him of the stock; and whether or not he was promised 25% of the net profits for the period.
 All the factual matters seem to have been decided by the chancellor in appellee’s favor and we have not become convinced that his findings were clearly erroneous. Lluis v. Lluis, 91 Fla. 706, 108 So. 671; First Atlantic National Bank of Daytona Beach, Fla. v. Cobbett, Fla., 82 So.2d 870. Of course, once he decided that appellee was in the right, the determination of the amount of the salary was simple, $100 for each week that he had not been compensated. When the chancellor decided that appellee was entitled to the stock, it was proper for him to fix a time within which he should pay for it and the corporation should deliver the certificate. We attach no significance to his having fixed an arbitrary period within which the exchange should be made.
We cannot agree that appellee was guilty of laches for his suit was filed only a little more than six months after he and the corporation parted; and we find no support for the position, assumed by appellants, that the appellee’s right to the stock depended on his continuing in the service of the corporation. See Lewis v. Arthur, Fla., 72 So.2d 397.
It would, in our opinion, be unfair to hold that the appellants could exclude the appellee from the corporate premises and because of his absence defeat his action. This would amount to permitting the appellants to profit from their own wrong. The appellants in four of their questions have adopted the premise that appellee was given an option to purchase the 25 shares of stock but we have not discovered in the record, in respect of this stock, any of the characteristics of an option. This was simply the share appellee was to get in accordance with the original arrangement for distribution of the stock.
At the beginning of the trial of the issues, framed bv the pleadings we have analyzed, counsel for the appellants had suggested that the court first determine whether or not a contract had been formed *849 and that if the contract should be established, it would then be ‘'convenient” to refer to a master the matter of accounting. The chancellor immediately assented to the first part of suggestion by announcing “All right,‘si'r. We will try the contract question — that is whether or not there is a contract.”
At the conclusion of the testimony, the chancellor found that a valid contract had been proved, and that the appellee was entitled to compensation and to the specified percentage of net profits of the corporation. He appointed a special master to take an accounting and render an accurate report of the affairs of the corporation for the period we have defined. This, procedure, suggested by counsel for appellants and followed by the court, seems to us logical but we cannot construe the eventual ruling as one determining the validity or invalidity of the contract on the narrow ground whether it was or was not in writing.
Upon appellants’ motion for clarification of the decree, so as to dispose of the issue whether or not appellee’s claim to the stock was well founded, the chancellor rendered a “clarifying order” in which he reiterated the existence of a valid contract, the performance by the appellee, and the establishment by appellee of his right to the salary and percentage of profits. He added that upon payment of $750 within 30 days, the appellee would be entitled to 25 shares of capital stock, and that in the event the Goldfarbs had caused all the stock to be issued to them they should disgorge 25 shares for appellee. He repeated that the master should inquire into the affairs of the corporation so that the net profits could be determined.
The appellants first challenged the court’s decree on the ground that the parties negotiated with the view of reducing their agreement to writing, but that this was not accomplished so no enforceable contract came into existence. We have concluded from an examination of the 'allegations of the complaint and the answers that the venture was actually launched and that appellee did perform services which were recognized and for which he was partially compensated. The chancellor found that he was entitled to the remainder of the compensation, that is, the salary for two weeks and the stipulated part of the profits. We have not been convinced his holding was clearly incorrect.
The computation of the net profits for the relevant period is more complicated. Decision that appellee was promised this remuneration was supported by testimony the chancellor believed, and when the chancellor so concluded, he appointed a master to take an accounting. This procedure was regular and sensible, and it accorded with the suggestion of counsel for appellants, to which we have alluded, made at the outset of the trial.
We find no error, so we affirm the decrees the appellants have assaulted.
Affirmed.
TERRELL, C. J., and ROBERTS and THORNAL, JJ., concur.